STATE of Texas, TEXAS DEPART-
MENT OF HUMAN SERVICES,
Appellant,

v.

Michelle Reneé PENN, et al., Appellee.

No. 09–88–306 CV.

Court of Appeals of Texas,
Beaumont.

Feb. 8, 1990.

Rehearing Denied March 14, 1990.

As Corrected Feb. 22, 1990.

Jack W. Smith, Asst. Atty. Gen., Austin, for appellant.

John H. Seale, Seale, Stover, Coffield, Gatlin & Bisbey, Jasper, for appellee.

## OPINION

WALKER, Chief Justice.

This appeal stems from a judgment in a civil action. Appellee initiated the suit claiming entitlement to worker's compensation death benefits. The decedent, Barbara Jean Penn, was seriously injured in a traffic accident on June 25, 1987 at approximately 8:00 a.m. Ms. Penn died of her injuries on July 8, 1987. The appellee is one of her two surviving minor children. At the time of the accident, Ms. Penn was in her personal automobile, taking her usual route to her place of employment, the Department of Human Services Office in Kirbyville, Texas. The only issue submitted to the jury was whether or not the injury sustained by Ms. Penn occurred "in the course of her employment for the Texas Department of Human Services?" The only explanatory material provided to the jury was as follows:

"'Injury in the course of employment' means any injury having to do with and originating in work, business, trade, or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere.

An injury occurring during the course of transportation is not in the course of employment, unless:

(1) the transportation is furnished as a part of the contract of employment or is paid for by the employer; or

(2) the employee is authorized, expressly or impliedly, by his employment contract to travel in the performance of his duties, and the injury occurred while he was so traveling."

The jury found for the appellee and the trial court entered judgment according to the verdict.

At the outset, we take note of the fact that appellant does not take exception to the form or content of the issue submitted to the jury. It appears that the proper standard of law was applied by the trial court. Appellant presents five points of error for consideration, four of which deal with sufficiency of the evidence. We feel that answering the first three points will preclude the need to answer the fourth or fifth.

Appellant groups its first three points of error together essentially arguing that there was no evidence to sustain the appellee's burden of proof, no evidence to support the jury's verdict, and no evidence to support the jury finding that Ms. Penn was "injured in the course of her employment".

In examining assertions of "no evidence", we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. If there is any evidence of probative force to support the jury's finding, the point of error must be overruled and the finding upheld. *International Armament Corp. v. King*, 686 S.W.2d 595 (Tex.1985); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Callisburg Independent School District v. Favors*, 695 S.W.2d 370 (Tex.App.—Ft. Worth 1985, writ ref'd. n.r.e.).

"No evidence" points of error may only be sustained when the record indicates one of the following: (1) a complete absence of evidence of a vital fact; (2) the

trial court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; (4) the evidence establishes conclusively the opposite of a vital fact. *Callisburg, supra,* at 371; *Royal Indem. Co. v. Little Joe's Catfish Inn,* 636 S.W.2d 530 (Tex.App.— San Antonio 1982, no writ); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Texas L.Rev. 361 (1960).

██ Mindful of the above cited standards for review, we now consider the evidence presented at trial interwoven with the issue as it was framed for the jury. We must find somewhere in the probative evidence either exception to the general rule set out in the Worker's Compensation law that an injury occurring during the course of transportation is not in the course of employment. TEX.REV.CIV. STAT.ANN., art. 8309, sec. 1b (Vernon 1967). We take note of the fact that there was no formal employment contract admitted into evidence by either party. Furthermore, transportation was not provided by Ms. Penn's employer. The rules and regulations regarding travel reimbursement for Texas Department of Human Services employees were introduced into evidence. They provide for no reimbursement for travel between an employee's home and the place of employment; and to be eligible for reimbursement at all, mileage *must* begin and end at the employee's place of employment. (Emphasis added). The only exception to the above rule is if mileage from the employee's home would be less than or equal to mileage from the place of employment. Ms. Penn's transportation was paid for by her employer, but *only* to the extent she was eligible based on the above rules. Ms. Penn's supervisor, Ms. Newton, testified that Ms. Penn would not have been reimbursed for her drive into the Kirbyville office on June 25 had the accident not occurred. This was true despite the fact that Ms. Penn had a client waiting to meet with her at the Kirbyville office. According to Ms. Newton, even if the interview had been considered an "emergency" situa-

tion and Ms. Penn had been called at her home to meet the client at the office at eight a.m., Ms. Penn still would not have been reimbursed for the drive to the office. Ms. Penn's assigned work hours were from eight a.m. to five p.m., Monday through Friday. Any travelling during these "normal working hours" between home and office was not subject to reimbursement. The only evidence seemingly to the contrary were four incidents in which Ms. Penn left her home to interview a client and was reimbursed. However, the facts of the four incidents fell within recognized exceptions. None of the incidents occurred during normal business hours; two occurred on weekends, one call was at 11:15 p.m., and one call was at 1:00 a.m. There is, therefore, a complete lack of evidence to show that the Texas Department of Human Services considers employee travel from home to office during normal business hours a travel expense subject to reimbursement. As such, Ms. Penn's drive to the office on June 25, 1987 was not "transportation paid for by the employer" for art. 8309, sec. 1b purposes.

██ Appellee's only other hope was grounded in the second exception in art. 8309, sec. 1b; that being that Ms. Penn's employment contract expressly or impliedly authorized her to travel in the performance of her duties, *and the injury occurred while she was so traveling.* As stated before, no employment contract was entered into evidence. It is undisputed that Ms. Penn's employment was contingent on her ability to travel to various locations in order to interview clients. The key question is, did her injuries occur while travelling in performance of her duties.

This Court acknowledges the fact that the language used in the Worker's Compensation law is subject to very broad interpretation. Any court could have a field day expanding or contracting the scope of these laws to fit whatever fact situation appears before it. We feel, therefore, that *stare decisis* must be the "Rosetta Stone" with which to guide us in our application of the statutory language to the probative evidence.

*Janak v. Texas Employer's Insurance Association,* 381 S.W.2d 176 (Tex.1964), provide us with the general rule that an injury occurring from the use of the public streets or highways in going to and returning from one's place of employment is noncompensable. The rationale appears to be that such an injury is suffered as a consequence of the risks and hazards to which all members of the travelling public are subject, rather than the risks and hazards having to do with and originating in the work or business of an employee. *Texas General Indemnity Company v. Bottom,* 365 S.W.2d 350 (Tex.1963); *United States Fire Ins. Co. v. Eberstein,* 711 S.W.2d 355 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Smith v. Dallas County Hosp. Dist.,* 687 S.W.2d 69 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Appellee, in the instant case, contends that Ms. Penn was on a "special mission" to meet with clients waiting at the office, and after the meeting Ms. Penn *probably* would have called Ms. Newton (Ms. Penn's supervisor) to report a "priority-one emergency situation". (Emphasis added). Appellee cites us to *Freeman v. Texas Compensation Ins. Co.,* 603 S.W.2d 186 (Tex.1980) for reliance on the "special mission" exception to the general rule of noncompensability.

In *Freeman,* the Supreme Court held that one of the exceptions to the general rule of noncompensability for travel injuries is a situation in which the employee performs a "special mission" at the express or implied request of his employer. *Freeman,* 603 S.W.2d at 192. Quoting directly from appellee's brief, it states:

"In the case of *Freeman v. Texas Compensation Insurance Company,* 603 S.W.2d 186 (Supreme Court 1980), the Court found in favor of the worker, and the facts in our case are much stronger. In *Freeman,* the worker was killed while apparently driving home after taking a lie detector test in downtown Fort Worth. The Court reasoned that the jury could have felt that this trip was in the course of Freeman's [sic] employment for Southwestern Bell because the employer would want to know about it 'because of its responsibility to the pub-

lic' (603 S.W.2d at 192). The man had been charged with attacking a woman in a parking lot about a month earlier, which of course had nothing to do with his employment. . . .

Surely no one could seriously contend that the worker in the *Freeman* case was in the course of his employment while driving home from a lie detector test trying to clear himself of an offense wholly unrelated to his job, and at the same time contend that Mrs. Penn was *not* in the course of her employment as she drove to meet clients of her employer to deal with a priority-one sexual abuse of a child matter." (Emphasis supplied).

The appellee would have us believe that the decedent in the *Freeman* case was acting completely independent of any knowledge or direction of his employer with regards to the taking of the lie detector test. *Freeman* states otherwise:

"An interview of Bolding (the decedent) with some of his supervisors was scheduled for Friday, September 13. At the interview, Bolding admitted that he had been at the parking lot, but denied that he had approached anyone. After discussing the discrepancies between Bolding's story and the story of the victim, Bolding *and his supervisors agreed* that Bolding would take a polygraph test the following day. *An appointment was arranged by Southwestern Bell for the following day.*" *Freeman,* 603 S.W.2d at 191. (Emphasis added).

One can see the obvious distinction between the facts and circumstances in the *Freeman* case, and those in the instant case. Appellee's reliance on *Freeman* is unfounded. In *Freeman, supra,* the decedent's employer set up the polygraph exam. From this fact alone, the appellate court's reversal of the trial court's judgment (notwithstanding the verdict) for the insurance company, and the subsequent affirmance by the Supreme Court was certainly correct, and not out of step with either statutory or case law. In the instant case, appellee emphasizes the supposed fact that the eight a.m. meeting at the D.H.S. office would have resulted in an

emergency/priority-one sexual abuse of a child declaration. Reiterating the testimony of Ms. Newton referred to earlier, even if the interview had been considered an emergency situation and Ms. Penn had been called at her home to meet the client at the office at eight a.m., on a normal workday, Ms. Penn would not have been reimbursed for the drive to the office.

This point of contention is quite similar to the point decided in both *Callisburg, supra* and *United States Fidelity & Guaranty Co. v. Harris*, 489 S.W.2d 312 (Tex. Civ.App.—Tyler 1972, writ ref'd. n.r.e.). In both cases, the decedents were taking their normal routes to work. Both decedents stopped to purchase items that were to be used at their respective places of employment. The respective store where each made her purchase was located on the normal and usual route each decedent took to get to work. Therefore, both decedents would have been making those same trips even if they had not purchased and taken the items. In the instant case, there is no evidence that Ms. Penn would not have been on her way to the Kirbyville office had she not made the eight a.m. appointment the previous day. The second exception under art. 8309, sec. 1b is also inapplicable.

For reasons set out above, this Court finds that appellee failed to prove Ms. Penn's injury was compensible under art. 8309 1b. It is our opinion that the trial court erred in overruling appellant's motion for instructed verdict and motion for judgment n.o.v. We, therefore, sustain appellant's first three points of error. The judgment of the trial court is reversed and judgment is rendered for appellant.

REVERSED and RENDERED.