**ST. LOUIS SOUTHWESTERN
RAILWAY COMPANY,
Appellant,**

v.

**Ken KING, Appellee.**

**No. 6–91–021–CV.**

Court of Appeals of Texas,
Texarkana.

Sept. 24, 1991.

Rehearing Overruled Oct. 15, 1991.

Mike A. Hatchell, Ramey, Flock, Jeffus, Crawford, Harper, Tyler, for appellant.

Jim Ammerman II, Parish, Parish & Ammerman, Gilmer, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Following Lynn King's death as a result of a collision between the pickup truck she was driving and a St. Louis Southwestern Railway Company train, Ken King, her surviving spouse, sued to recover damages against the Railway. The jury found that the Railway negligently caused Lynn King's death, damaging Ken King, and failed to find negligence on the part of Lynn King. On appeal, the Railway does not challenge the finding that it was negligent or question the damages awarded. Rather, it concentrates on the failure of the jury to find Lynn King negligent, claiming that this failure to find is against the great weight and preponderance of the evidence. The Railway also raises an evidentiary point. We conclude that the jury's failure to find Lynn King negligent is not against the great weight and preponderance of the evidence, find no other error, and affirm the trial court's judgment.

About 4:30 p.m. on May 26, 1982, Lynn King drove east on Tyler Street in Gilmer. A Railway train proceeded north towards the intersection of its tracks with Tyler Street. The vehicles collided approximately corner to corner. The impact threw King from her vehicle, causing severe injuries, resulting in her death the next day.

The railroad crossing, which is located near downtown Gilmer, was marked with cantilever lights that suspend over the road, in addition to the standard railroad crossbucks. As the primary issue on appeal is evidentiary in nature, additional evidence is discussed in our evaluation of whether the jury's failure to find King contributorily negligent is against the overwhelming weight and preponderance of the evidence.

Mike Ashby[1] and Berry Ferrill[2] were the only two disinterested eyewitnesses to the accident that testified at trial.[3] Ashby and Ferrill testified that they were in the car following King, that the train appeared out of nowhere, and that the view of the train tracks was obstructed by houses and tall bushes. Neither remembered seeing the warning lights flashing or hearing bells or whistles before the accident, although they recalled that all signals were operating after the accident.

Ken King testified that as he was driving home the day following the accident, the bushes and shrubs which had obscured the tracks were being cleared by Railway employees. Thomas Calhoun, an investigator for the Railway, also testified that he was at the scene of the accident the following day and that no one was clearing shrubs from the Railway's right-of-way. However, in several photographs taken by Calhoun that day, survey stakes, a brush ax, as well as piles of freshly cut brush appear. He could not explain these items. These

1. Ashby testified as follows:
   A We were following a vehicle and out of the clear blue the train struck it as it was trying to cross the tracks.
   Q The vehicle would be Lynn King's vehicle?
   A Yes.
   Q What was the first thing that you saw?
   A The first thing that I saw, I remember looking up and realizing that a train just came out of nowhere out of the bushes to the left and struck the truck, taking it off the road to the right, and a lot of dust, and Berry, the driver, we looked at each other and just out of shock realized that the train was there. I don't know where it came from....
   ....
   Q As you were approaching the railroad crossing there before the train hit the truck, was there anything that warned you that the train was coming?
   A No
   Q Did you see any lights?
   A I didn't notice any lights or hear any bells or train whistles.

2. Ferrill testified as follows:
   A ... I was a distance behind the truck, not that far behind it, when we approached the crossing, and out of nowhere the train appeared and collided with the truck....
   ....
   Q And was there anything, Mr. Ferrill, that indicated—warned you at all about what was fixing to happen? Did you have any idea a train was coming?
   A Not that I remember. I do remember after the accident that I did see some red lights after the accident occurred.
   Q After?
   A Yes, sir.
   ....
   Q Before the accident, was there any—did you have any idea a train was coming?
   A Not that I remember, sir.

   Q You don't remember seeing any lights before?
   A Not that I can remember. It's been eight years.
   Q Did you hear a whistle?
   A No, sir.
   Q Did you hear any bells at all before the—?
   A No, sir.
   Q Did you see—now, when you were driving along down here, were you watching where you were going?
   A Yes, sir.
   Q Like a driver is supposed to?
   A Yes, sir.
   Q Did you see Mrs. King's brake lights come on, that you remember?
   A I do remember seeing brake lights come on the pickup, but it was right at the crossing or real close to the crossing.
   Q When you got up there, was there (sic) visibility obstructed?
   A Yes, sir.
   Q Of the tracks?
   A Yes, sir.
   Q Of a train coming?
   A (Witness nods head.)

3. Two other disinterested eyewitnesses did not testify. Doris Pieratt had earlier given a statement to attorneys for the Railway in which she said that she saw King's truck approaching the tracks and that all signals, including lights and bells, were functioning before the accident. Pieratt was not allowed to testify at trial because she had not been designated as a witness. Jean Keller also did not testify at trial due to an illness in her family. The Railway did not subpoena her or ask the court for a continuance to enable her to testify.

photographs, when compared with those taken the day of the accident, demonstrate that brush had been cleared by the following day.

George Greene, Jr., an expert witness, testified that he had knowledge of accident situations where railroad signal lights failed to function before an accident, but were operational after the accident. He indicated that because the railroad crossing had an east-west orientation, it was possible that the afternoon sun made it impossible for King to see the warning lights and that, because of this danger, signal lights alone were never adequate at east-west railroad crossings. He stated that if the lights were not functioning or were not visible, given the obstructions such as houses and shrubs blocking the view of the tracks, by the time King could first have seen the train, it would have been impossible for her to stop in time to avoid the accident. He further testified that the twenty-one feet of skid marks indicated that she braked at the first possible moment. He added that, due to the volume of traffic at the crossing, the number of accidents in the past, and other factors, the crossing had been designated as extra-hazardous by the Highway Department; at the time of the accident, the crossing was the number one priority for upgrading in the state.

In our review of a jury's finding or its failure to find, we may not merely substitute our judgment for that of a jury. *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex.1988). However, pursuant to TEX. CONST. art. V, § 6, when called upon, we review contentions that a jury's failure to find a fact is against the great weight and preponderance of the evidence. *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d at 650; *Traylor v. Goulding*, 497 S.W.2d 944, 948 (Tex.1973). In reviewing this or any other factual sufficiency challenge, we consider all of the evidence, including evidence contrary to the jury's verdict. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989); *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980). We turn to the evidence of

record to apply these established standards of review.

The Railway presented evidence that Ashby and Ferrill's testimony at trial differed from statements they had made earlier to its investigator. It denied that it had any knowledge of brush being cleared immediately after the accident and stated that the accident scene depicted in its photographs was unchanged from the time of the accident. Additionally, members of the Railway crew testified that, from their vantage point, all signals were functioning and the horn, bell and oscillating headlight of the train were working at the time of the collision. They also testified that, as soon as they realized that King was not going to stop, they applied the emergency brakes, but were unable to stop in time to avoid the accident. While the Railway observes that the testimony regarding the train engine's warning systems was not disputed, the credibility of those witnesses was brought into question.

When the jury is presented with conflicting evidence, it may choose to believe one witness and disbelieve others, or it may resolve inconsistencies in the testimony of any witness. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 699 (Tex.1986). As the trier of fact, the jury is the sole judge of the credibility of witnesses and the weight to be attached to their testimony. *Dalton v. George B. Hatley Co.*, 634 S.W.2d 374, 377 (Tex.App.–Austin 1982, no writ). Although there was evidence from which the jury could have determined that King was contributorily negligent, there was also evidence supporting the jury's failure to find contributory negligence and its finding that the Railway was 100 percent negligent. Considering all of the evidence, we cannot conclude that the jury's failure to find King negligent was against the great weight and preponderance of the evidence. In light of the evidence adduced at trial, were we to so conclude, we would be erroneously substituting our judgment for that of the jury. This we decline to do.

■ The Railway also brings a two-pronged attack on an evidentiary ruling. It claims that the trial court erred in strik-

ing portions of a police officer's report made at the scene of the accident and in refusing to allow James Brown, the officer, to testify as to the cause of the accident. Brown testified as to what he observed and heard when he arrived at the scene, recounting the witnesses he interviewed and the statements made to him. Brown's testimony centered on what he had seen and heard immediately following the collision. When the Railway's attorney asked a question which called for Brown's opinion as to the cause of the collision, upon objection, the court indicated that unless Brown qualified as an expert witness in accident reconstruction, he would not be allowed to give his opinion. The trial court announced that Brown could so qualify. Thereafter, both sides questioned Brown about his qualifications, which included: approximately eight years' service with the Gilmer police department,[4] attendance at a police officers' academy, and a seminar on accident investigation. After being questioned about his qualifications, Brown was neither offered as an expert witness, nor asked his opinion of the accident's cause. Additionally, the substance of his testimony as to causation was not made known to the court.

Whether a witness is qualified as an expert is one for judicial determination and will not be disturbed on appeal absent an abuse of discretion. *Bilderback v. Priestley*, 709 S.W.2d 736, 741 (Tex.App.–San Antonio 1986, writ ref'd n.r.e.). A police officer, by his position alone, is not qualified to render an expert opinion regarding an accident. *Pyle v. Southern Pac. Transp. Co.*, 774 S.W.2d 693, 695 (Tex.App.–Houston [1st Dist.] 1989, writ denied). The trial court in no manner erred in ruling that Brown was not qualified to testify as an expert witness for several reasons. First, Brown was never offered as an expert witness, even though the court had indicated that if he were shown to be qualified, he could express his opinion as provided by TEX.R.CIV.EVID. 702. Second, since the substance of any such excluded testimony was not made known to the court, no error could be predicated on the court's ruling,

had the court been asked to rule. TEX. R.CIV.EVID. 103(a)(2). And, third, had the court ruled that Brown was not qualified as an expert witness to express an opinion about the cause of the collision, we would find no abuse of trial court discretion. *See, e.g., Hooper v. Torres*, 790 S.W.2d 757, 760–76 (Tex.App.–El Paso 1990, writ denied); *Pyle v. Southern Pacific Transp. Co.*, 774 S.W.2d at 695.

■ We now turn to the other prong of the Railway's evidentiary complaint, that the trial court erred in striking portions of Brown's official police report that was admitted in evidence. The stricken portions dealt with the cause of the collision and were properly excluded because Brown was not offered as, or shown to be, an expert witness. *Hooper v. Torres*, 790 S.W.2d at 760–61. Furthermore, even if the court had erred in excluding those portions of the report, the error would not have been the type reasonably calculated to cause the rendition of an improper verdict because the report had been read in evidence and was otherwise before the jury. TEX.R.APP.P. 81(b)(1). With regard to the evidentiary complaints made on appeal, we find them lacking merit based on the facts and the law.

We find no trial court error and affirm.

### ON MOTION FOR REHEARING

On motion for rehearing, the Railway complains that we erred in our review of the facts and in applying the weight and preponderance of the evidence standard for review of the evidence. Upon reconsideration, we remain convinced that, based upon all of the evidence, including that contrary to the jury's finding, neither the jury's failure to find Lynn King contributorily negligent nor its finding that the Railway was 100 percent negligent is against the great weight and preponderance of the evidence.

The Railway also complains of our overruling its point of error asserting trial court error in striking portions of the police

---

**4.** Because the trial occurred about eight and one-half years after the collision, the trial court

may well have found that Brown was quite inexperienced based on the evidence before it.

report made by Glenn Brown and in refusing to allow Brown's testimony as to the cause of the accident. Although the Railway's argument under this point of error is multifaceted, we have attempted to make our holding as precise as possible. We reiterate that the trial court did not err in striking those parts of Brown's report in which he stated his opinion of the cause of the accident and in precluding Brown from testimonially stating his opinions because he was not shown to be an expert witness, and the trial court was not shown to have abused its discretion in failing to hold that Brown was qualified as an expert on the cause of the collision. The trial court appears to have carefully and properly exercised its discretion in its rulings on the evidence. The complaints concerning the trial court's actions in this regard, though artfully lodged, lack merit based on the record of these proceedings.