**Mary SCIARRILLA, Appellant,**

v.

**Michael K. OSBORNE, Appellee.**

**No. 09–95–365 CV.**

Court of Appeals of Texas,
Beaumont.

Submitted Feb. 20, 1997.

Decided June 26, 1997.

Suzanne Werner, Richard J. Clarkson, Bob Wortham, Reaud, Morgan & Quinn, Beaumont, for appellant.

Christy Amuny, Pate & Dodson, Beaumont, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

This is a suit for personal injuries brought by Mary Sciarrilla as a result of an automobile accident which occurred on September 12, 1991. Plaintiff, now appellant, Mary Sciarrilla, filed suit against defendant, now appellee, Michael K. Osborne, claiming that he was negligent in causing the automobile accident made the basis of this suit. Plaintiff contended that defendant came into her lane and forced her vehicle off the road, causing the plaintiff's vehicle to flip over numerous times. Plaintiff Sciarrilla claimed injuries to her neck, back and head as a result of the accident. Defendant Osborne claimed that he was not negligent and that he did not run plaintiff's vehicle off the road. Osborne contended that Sciarrilla herself was negligent in causing the accident.

The jury found plaintiff to be negligent in causing the accident, thus pursuant to court instructions, the jury did not answer the questions regarding damages. The trial court entered judgment in favor of defendant, Michael K. Osborne, and against plaintiff, Mary Sciarrilla, from which appellant Sciarrilla now appeals.

Appellant brings three points of error which we shall pursue in the order presented. Point of error one contends that the trial court erred in allowing Trooper Daniel Young to testify as an expert witness.

The accident was investigated by Trooper Daniel Young. At the time he testified, Trooper Young was a Trooper II with the Texas Department of Public Safety. Trooper Young has a Bachelor of Science Degree in Criminal Justice, majoring in law enforcement, from Southwest Texas State University. Trooper Young took science and engineering courses in college. Trooper Young had been with the Texas Department of Public Safety since September 12, 1989. During his twenty-two (22) weeks at the police academy, Young received training in accident investigation and in all areas of law enforcement, most of which was based on traffic laws. Trooper Young moved to the Highway Patrol Division in May 1991. In July and August 1991, Trooper Young attended a three week advanced accident reconstruction school through the Department of Public Safety in Austin. When Trooper Young began Highway Patrol Division in May 1991, he was required to ride with a senior officer for six months. Prior to the accident which was the subject-matter of the present suit, Troop-

er Young had investigated approximately thirty-five to forty automobile accidents. Trooper Young had completed the advanced accident reconstruction school approximately one month before the September 12, 1991 accident. He had investigated approximately ten to fifteen accidents between the time he completed the advanced accident investigation school and the time he investigated the accident in question. At the time of his testimony, Trooper Young had investigated probably between four hundred and five hundred accidents.

While attending the advanced accident reconstruction school, Trooper Young learned how to arrive at an accident scene, take physical evidence and use that evidence to reconstruct what happened in an accident. His training with regard to physical evidence included observing and evaluating the physical evidence left from the vehicles themselves, parts of the vehicle, where the vehicles may come to rest, skid marks, scuff marks, etc. Trooper Young learned to take the weights of vehicles, where such vehicles come to rest, and use different types of formulas to calculate speed, direction of travel, and the like. His training included how to take the physical evidence at the scene and work the accident just from physical evidence. Young learned to evaluate the physical evidence at an accident and tell what happened from the point where the physical evidence starts until the final act of an accident. Young learned how to forego what people tell him happened in an accident and to base his conclusion on the physical evidence left there at the scene. Trooper Young testified that when he investigates an accident, his investigation and any opinions or conclusions he may have are based upon his training at the academy, his training at the advanced accident reconstruction school and his experience in investigating accidents.

Prior to Trooper Young's testimony, his credentials were proved up outside the presence of the jury. Opposing counsel had an opportunity to voir dire Trooper Young regarding his credentials also outside the presence of the jury. While outside the presence of the jury, and prior to Trooper Young's testimony, opposing counsel stated the following:

Factual testimony, we have no objections to him testifying to as to what he observed out there. It's the conclusions that we object to, Your Honor, as being a trooper for less—I mean, actually being a trooper for less than five months, only out of school a month, still a trainee. I just don't see any way that he can be classified on December [sic] 12th, 1991 as an expert.

This was the only objection to Trooper Young's testimony made by opposing counsel. The trial court gave serious consideration regarding Trooper Young's qualifications to testify as an expert as we see from the following colloquy by the court:

THE COURT: Well, an interesting question this has turned out to be. I'm not going to mind stating on the record a close question. Let me think about this for a little bit.

.      .      .      .      .

[Appellee's trial counsel] They can testify that police officers also give testimony as lay witnesses based on what they perceive when they get there as well as their experience as a police officer.

.      .      .      .      .

THE COURT: The Court will allow the officer to testify. Bring in the jury.

We find nothing in the record designating Trooper Young as an expert witness, though we recognize that his opinion regarding physical evidence was offered and considered as that of an expert.

In challenging Trooper Young's qualifications as an expert, appellant primarily relies on the cases of *Clark v. Cotten*, 573 S.W.2d 886 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.); *Estate of Brown v. Masco Corp.*, 576 S.W.2d 105 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.); and *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex.1995). In *Clark*, plaintiff attempted to introduce testimony from a State Trooper as to the ultimate cause of the accident. This Beaumont Court of Appeals determined that even though the State Trooper had been with the Department of Public Safety for eight

and one-half years, received seventeen weeks of training and investigated three hundred and fifty accidents, these credentials failed to qualify the trooper to opine the ultimate cause of the accident. We distinguish *Clark* from the present case in that in *Clark*, there was no showing that the trooper had any specialized training in accident investigation or accident reconstruction. The seventeen weeks training referenced in *Clark*, does not indicate the type of training and whether such training was simply basic academy training or some other type of training. In the present case, Trooper Young specifically testified that he had additional and specialized training in the area of accident investigation by his attendance to advanced accident reconstruction school through the Texas Department of Public Safety. Even though Trooper Young had less time and service with the Department of Public Safety than did the trooper in *Clark*, Young was shown to have specialized training and education in the area in which expert opinion was given.

With regard to the *Brown* case, the qualifications of the police officer in question substantially differ from those of Trooper Young. The officer in *Brown* had only three days of accident investigation training, had investigated only twenty accidents prior to the trial, and his degree was in elementary education. *Brown*, 576 S.W.2d at 108. Recall that Trooper Young's degree was in criminal justice and had received accident training not only in the police academy but also had attended a three-week advanced accident reconstruction school about one month prior to the accident in question, and that prior to the accident in question Trooper Young had investigated approximately thirty-five to forty accidents.

Our Texas Supreme Court has issued two recent opinions discussing the law with regard to qualifications of individuals being proffered as expert witnesses, as opposed to the scientific reliability of the data used by an already acknowledged expert in forming his or her opinion, as was the issue raised in *E.I. du Pont de Nemours & Co. v. Robinson, supra.* In June of 1996, the Court handed down *Broders v. Heise*, 924 S.W.2d 148 (Tex. 1996), and then in January of 1997, the Court

issued *United Blood Serv. v. Longoria*, 938 S.W.2d 29 (Tex.1997). We quote from *Longoria*:

Whether a witness is qualified to offer expert testimony is a matter committed to the trial court's discretion. *Broders v. Heise*, 924 S.W.2d 148 (Tex.1996). The trial court must determine if the putative *expert has "knowledge, skill, experience, training, or education" that would "assist the trier of fact." See* TEX.R. CIV. EVID. 702. The burden of establishing an expert's qualifications is on the offering party. *Broders*, 924 S.W.2d at 151. We gauge abuse of discretion by whether the trial court acted without reference to any guiding rules or principles. *E.I. du Pont de Nemours and Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex.1995).

*Longoria*, 938 S.W.2d at 30–31.

To all of the above, the Court in *Broders* added the following observation, "What is required is that the offering party establish that the expert has 'knowledge, skill, experience, training, or education' regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject. [citation omitted]" *Broders*, 924 S.W.2d at 153. The testimony of Trooper Young was partly scientific/technical and partly opinion based on said scientific/technical evidence gathered at the scene of the accident. His testimony was strictly limited to physical evidence obtained at the scene of the accident. Appellant's brief points us to the following testimony of Trooper Young as the basis for her complaint:

Q. [Appellee's trial counsel] Officer, based on your investigation of this accident, do you have an opinion as to how this accident occurred?

A. [Young] Yes, ma'am, I do.

Q. And what is that opinion, sir?

A. Based—based solely on the physical evidence left at the scene of the accident, I believe that the S–10 Blazer [appellant's vehicle] was traveling in what would be the outside lane—the lane farthest from the interstate-traveling—left the roadway to the right, panicked to some extent, overcorrected to the left, came back up on the roadway—that's what left—that's what left

the mark on the center stripe—attempted to regain control of her vehicle, jerked over to the right, and this vehicle lost—this vehicle left the roadway from the right up on the gravel or the shoulder and lost control of the vehicle and flipped over.

Trooper Young's testimony also provided that none of the physical evidence present at the scene of the accident indicated Osborne did anything to cause or contribute to the accident. On cross-examination, the trooper confirmed the fact that he did not have an opinion as to what happened *before* the point where the physical evidence began, and did not know what caused appellant to lose control of her vehicle. Trooper Young further admitted that it was possible that appellant was forced off the road and if that were the case there would be no physical evidence to show it. In short, Trooper Young's testimony was essentially confined to his interpretation of the physical evidence present at the scene of the accident, without regard to the legal blameworthiness of either party. A close examination of both direct and cross-examination testimony of Trooper Young indicates that his interpretations regarding the physical evidence virtually tracked and confirmed the testimony given by appellant as to the sequence of events involving herself and her vehicle. For all of these reasons, we simply cannot say that the trial court abused its discretion in its apparent finding of Trooper Young's expertise in accident reconstruction investigation and thereafter permitting Young to testify as to the results of his investigation. Point of error one is overruled.

Appellant's point of error two contends that the trial court erred in permitting the accident report prepared by Trooper Young to go before the jury.

Trooper Young, as required by the Texas Department of Public Safety and the State of Texas, prepared a written report regarding his investigation and findings. Defendant's Exhibit No. 1 was proved up as a true and correct copy of the report made by Trooper Young of the accident on September 12, 1991. During defense counsel's prepatory foundation for the admission of Defendant's Exhibit No. 1, plaintiff's counsel made the following objection: "We're going to object to the introduction of whatever number it is. I didn't catch the number. We do not feel that proper predicate is laid. We do not feel the document is admissible in its form, and we feel that it is hearsay—rank hearsay." No ruling was made by the trial court at the time and defense counsel moved forward with proving up the report. Following further lengthy predication, defense counsel offered Defendant's Exhibit No. 1, which, following redaction and corrections, was admitted. Plaintiff's counsel stated: "We'll renew our objections, your Honor." The corrections constituted redacting all references to insurance and traffic citations issued to any party.

Rule 803 of the Texas Rules of Civil Evidence, pertaining to hearsay exceptions, states the following:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

(6) **Records of regularly conducted activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. "Business" as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

\* \* \* \* \* \*

(8) **Public records and reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth (A) the activity of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which

matters there was a duty to report, or (C) factual findings resulting from an investigation made pursuant to authority granted by law; unless the sources of information or other circumstances indicate lack of trustworthiness.

▮ Trooper Young's written report clearly falls within the two stated sections as an exception to hearsay rule. *Carter v. Steere Tank Lines, Inc.*, 835 S.W.2d 176 (Tex.App.-Amarillo 1992, writ denied); *Clement v. Texas Dep't of Public Safety*, 726 S.W.2d 579 (Tex.App.—Fort Worth 1986, no writ); *Porter v. Texas Dep't of Public Safety*, 712 S.W.2d 263 (Tex.App.—San Antonio 1986, no writ).

▮ Rule 103(a)(1), Texas Rules of Civil Evidence requires that an objection to evidence be specific. Where a specific ground for objection is not stated a general objection amounts to no objection at all. *Murphy v. Waldrip*, 692 S.W.2d 584 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.). A general objection to a unit of evidence as a whole, which does not point out specifically the portion objected to, is insufficient. *See Cherokee Water Co. v. Gregg County Appraisal Dist.*, 773 S.W.2d 949 (Tex.App.—Tyler 1989), *aff'd*, 801 S.W.2d 872 (Tex.1990).

At trial, appellant made two objections to the admission of the accident report, namely that the report was hearsay and that the proper predicate was not laid. Appellant's case law on this issue was handed down prior to enactment of the Rules of Civil Evidence. Said cases stand for the proposition that although public records are admissible as an exception to the hearsay rule, the contents of such records, which may include ex parte statements, hearsay, conclusions and opinions, are subject to the same rules of evidence respecting relevancy, competency, or materiality as any other evidence. *Texas Dep't of Public Safety v. Nesmith*, 559 S.W.2d 443, 447 (Tex.Civ.App.—Corpus Christi 1977, no writ). In the instant case, appellant merely made a generic "hearsay" objection to Defendant's Exhibit 1. She did not further object that the Trooper's opinions contained within the document itself may, for example, have been irrelevant (Tex.R. Civ. Evid. 402), or that its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or would be misleading to the jury (Tex.R. Civ. Evid. 403). As such, appellant's brief addresses issues which do not comport with the objection raised before the trial court. Said issues are therefore waived for appellate review. *See Estate of Veale v. Teledyne Indus.*, 899 S.W.2d 239, 242–243 (Tex.App.—Houston [14th Dist.] 1995, writ denied). Point of error two is overruled.

▮ Finally, appellant's point of error three contends that the trial court erred in refusing to permit plaintiff, Mary Sciarrilla, to impeach Trooper Young's credibility through testimony regarding the disposition of Mary Sciarrilla's traffic citation.

The accident report prepared by Trooper Young was admitted into evidence following redaction. The portion pertaining to Sciarrilla's receiving a traffic citation was removed. At no time during Trooper Young's testimony did he state that Sciarrilla received a traffic citation nor was Trooper Young asked such question. The only testimony regarding a traffic citation was presented during a bill of exception outside the presence of the jury.

It is plaintiff's contention that she should have been allowed to admit evidence that she received a traffic citation and ultimately show that a subsequent trial in justice court resulted in a finding that Sciarrilla was not guilty. Appellant contends that such evidence is admissible to "impeach" the testimony and credibility of Trooper Young.

Rules 607 through 610, and Rule 613 of the Texas Rules of Civil Evidence speak to witness impeachment. We fail to see how appellant's tender qualifies under the stated rules. There is no written transcript of the justice court proceeding nor is there any allegation, contention or proof that Trooper Young made any statements which were untruthful or that he made any inconsistent statements. There is nothing about Trooper Young's prior testimony in justice court which could be used for impeachment purposes unless Young made an untruthful statement or an inconsistent statement. Appellant further contends that being found

"not guilty" in justice court is evidence that Trooper Young's testimony in that court was not credible. The mere fact that a jury rendered a "not guilty" verdict in no way shows or proves that Trooper Young was shown to be non-credible. We find appellant's argument as to why evidence of the justice court proceedings should be admitted into evidence to be without merit and groundless. The trial court properly excluded this evidence from the jury. Appellant's point of error three is overruled and the trial court's judgment is affirmed.

AFFIRMED.

STOVER, Justice, concurring.

Query: Did the trial court err in allowing Trooper Young to testify as an expert witness concerning causation? I concur with the majority in finding that the trial court did not err. In so doing, I emphasize that the qualification of a witness as an expert is within the trial court's discretion.

In their treatment of admissibility of expert witness testimony, Texas courts have consistently employed the abuse of discretion standard. *United Blood Services v. Longoria*, 938 S.W.2d 29 (Tex.1997); *Hernandez v. H.S. Anderson Trucking Co.*, 370 S.W.2d 909, 911 (Tex.Civ.App.—Beaumont 1963, writ ref'd n.r.e.). Guiding principles of case law and the Texas Rules of Evidence are applied to the issue on a case by case basis. For example, in a line of cases where the trial court *excluded* the officer's testimony, no abuse of discretion was shown, because the officer was not offered as an expert or was not shown to be qualified to testify as such. *Hooper v. Torres*, 790 S.W.2d 757 (Tex. App.—El Paso 1990, writ denied); *St. Louis Southwestern R. Co. v. King*, 817 S.W.2d 760, 763 (Tex.App.—Texarkana 1991, no writ). Likewise, no abuse of discretion occurred in *Trailways, Inc. v. Clark*, 794 S.W.2d 479, 483 (Tex.App.—Corpus Christi 1990, writ denied), when the trial court *admitted* the officer's testimony regarding his estimate of vehicular speed based upon skid marks at the scene of the accident. The officer's testimony was admissible, because he was shown to be qualified to offer an opinion in that area of accident investigation. *Id.* at 483.

In my judgment, the decision regarding whether an officer has sufficient expertise to testify should remain within the purview of the trial court's discretion. There should be no "bright line rule" allowing or disallowing officer expert testimony. In the instant case, the record shows Trooper Young had been to accident reconstruction school and knew more about the subject matter than the jury. The officer was not giving his opinion based upon his review of a report prepared by another; on the contrary, his opinion was based upon his own investigation and the facts gathered at the scene—information which would assist the jury in its function. As noted in *Louder v. DeLeon*, 754 S.W.2d 148 (Tex.1988), "Jurors realize that they are the final triers to decide the issues. They may accept or reject an expert's view. Thus there is little danger in an expert's answer to an all-embracing question on a mixed question of law and fact."

The people of the State of Texas employ the members of the Texas Highway Patrol and train them to investigate accidents. In many automobile accidents the officers are qualified to testify to their opinions. Once a party establishes a witness is qualified to give an opinion on the matter at issue, the witness should be permitted to do so. The factual basis on which he arrives at his opinion may then be tested by vigorous cross-examination. The weakness or strength of the facts in support of the expert's opinion goes to the weight of his testimony rather than its admissibility. *Onwuteaka v. Gill*, 908 S.W.2d 276, 283 (Tex.App.—Houston [1st Dist.] 1995, no writ).

"Abuse of discretion" was and is the standard, as well as the precedent, governing the admissibility of expert testimony. *See United Blood Services*, 938 S.W.2d at 30; *Hernandez*, 370 S.W.2d at 911. That precedent should be applied on a case by case basis, as has been done in the majority opinion.

BURGESS, Justice, dissenting.

I respectfully dissent. In point of error one the majority has approved the trial court's ruling that Highway Patrolman Young was qualified to testify as an expert.

The majority restates two well-established propositions: it is within the trial court's discretion to determine if a witness is qualified to offer expert testimony and this court gauges abuse of discretion by whether the trial court acted without any reference to any guiding rules or principles, citing *United Blood Ser. v. Longoria*, 938 S.W.2d 29 (Tex. 1997) and *Broders v. Heise*, 924 S.W.2d 148 (Tex.1996).

The trial court certainly had guiding rules and principles under *Clark v. Cotten*, 573 S.W.2d 886, 887 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.), and *Estate of Brown v. Masco Corp.*, 576 S.W.2d 105, 108 (Tex. Civ.App.—Beaumont 1978, writ ref'd n.r.e.), in two areas, yet did not follow those cases. The first area being Patrolman Young's qualifications and the second being the extra weight a police officer's opinion carries with the average juror.

In *Clark*, Chief Justice Dies held the trial court was correct in excluding the testimony of a highway patrolman who had been with the Department of Public Safety eight and one-half years, had received seventeen weeks of training, and had investigated 350 accidents. Chief Justice Dies stated the general rule that accident analysts and reconstruction experts · can be qualified if they are highly trained in the science of which they testify and noted a quote from Ewing Werlein, Jr., Note, *Evidence–Witnesses Admission in Evidence–Automobiles–Collision– Opinion Testimony of Expert "Accident Analyst" Reconstructing Collision Admissible. Bolstad v. Egleson*, 326 S.W.2d 506 (Tex.Civ. App.—Houston 1959, writ ref'd n.r.e.), 38 TEX. L. REV. 503, 506 n. 14 (1960):

> As for regular police officers, sheriffs, mechanics, etc., it generally may be said that they lack such training and experience as would qualify them to make a *scientific* analysis from physical evidence, regardless of how many accident scenes they may have examined.

(See also Chief Justice Dies' opinion in *Estate of Brown*, 576 S.W.2d at 105.)

Justice Barajas, now Chief Justice, in *Lopez v. Southern Pac. Transp. Co.*, 847 S.W.2d 330 (Tex.App.—El Paso 1993, no writ) acknowledged the general rules that a police officer is not qualified to render an expert opinion regarding an accident based upon his position alone, citing *Pyle v. Southern Pac. Transp. Co.*, 774 S.W.2d 693, 695 (Tex.App.— Houston [1st Dist.] 1989, writ denied), and that accident analysts and reconstruction experts may be qualified to testify as to causes of accidents if they are highly trained in the science of which they testify, citing *Clark*, 573 S.W.2d at 886; *Texaco v. Romine*, 536 S.W.2d 253, 256–57 (Tex.App.—El Paso 1976, writ ref'd n.r.e.); and *Hooper v. Torres*, 790 S.W.2d 757, 759 (Tex.App.—El Paso 1990, writ denied). In discussing what amount of training is mandated in order to qualify one as an expert in accident reconstruction, he opined the question is one that has continually escaped a "bright line" analysis and set out the officers qualifications in *Clark, Brown*, and *St. Louis Southwestern Ry. Co. v. King*, 817 S.W.2d 760, 763 (Tex.App.— Texarkana 1991, no writ). Alternatively, he noted, in *DeLeon v. Louder*, 743 S.W.2d 357, 359–60 (Tex.App.—Amarillo 1987), *writ denied per curiam*, 754 S.W.2d 148 (Tex.1988), a state trooper who had accident reconstruction training and had *taught* accident investigation was qualified to testify as an expert.

The majority "distinguishes" *Clark*, because, although the patrolman had been with the Department of Public Safety eight and one-half years and had investigated 350 accidents, there was no showing of any specialized training in accident investigation or accident reconstruction during that patrolman's seventeen weeks of training, while Young had attended a three-week advanced accident reconstruction school. The majority also say the qualifications of the officer in *Brown*, his training only included three days on investigation of accidents, he had only investigated about twenty accidents and his degree was in elementary education, "substantially differ" from Young's qualifications. This comparison of the "numbers" associated with each officer misses the legal issue established by *Brown* and *Clark*, i.e., an officer who only has the minimum training and experience of a regular patrolman or officer, does not qualify as an expert. Young testified *all* Department of Public Safety officers went to the basic academy and *all* highway patrolmen

attended the three-week advanced accident reconstruction school. Today the majority has held a highway patrolman who has taken the training given all regular highway patrolmen, who still required supervision by a veteran patrolman and had investigated between 35 and 40 accidents at the time of the Sciarrilla accident, is qualified to testify as an expert. Consequently, the majority has taken the well-reasoned legal rule, which can be uniformly applied, established by *Brown* and *Clark* and overruled it.

In *Brown,* Chief Justice Dies also recognized a police officer's opinion as to the cause of a traffic accident carries extra weight with the average juror.[1] In this case the trial judge acknowledged admitting Young's testimony, as an expert, was "a close question."[2] In my view, the trial court should have followed Chief Justice Dies' previous writings[3] and resolved this close question in favor of excluding Young's expert testimony and opinions.

Stare decisis alone requires a continued adherence, by this court, to the rule established in *Brown* and *Clark.* Our two highest courts and this court have expressed their thoughts on stare decisis and its importance.

Our Texas Supreme Court in *Weiner v. Wasson,* 900 S.W.2d 316, 319–20 (Tex.1995) acknowledged they had, on occasion and for compelling reasons, overruled earlier decisions, but they generally had adhered to precedents for reasons of efficiency, fairness, and legitimacy. They noted if they did not follow their own decisions, no issue could ever be considered resolved and the potential volume of speculative relitigation under such circumstances alone ought to persuade them that stare decisis is a sound policy. They also said they should give due consideration to the settled expectations of litigants who justifiably rely on principles articulated in earlier cases, referencing *"Quill Corp. v. North Dakota,* 504 U.S. 298, 321, 112 S.Ct.

1904, 1916, 119 L.Ed.2d 91 (1992) (J. Scalia, concurring) ('[R]eliance on a square, unabandoned holding of the Supreme Court is always justifiable reliance....')" They concluded by noting that, under our form of government, the legitimacy of the judiciary rests in large part upon a stable and predictable decision making process that differs dramatically from that properly employed by the political branches of government, citing *"Vasquez v. Hillery,* 474 U.S. 254, 265–66, 106 S.Ct. 617, 624, 88 L.Ed.2d 598 (1986) ('[Stare decisis] permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals, and thereby contributes to the integrity of our constitutional system of government, both in appearance and in fact.')"

Likewise the Court of Criminal Appeals in *Ex parte Porter,* 827 S.W.2d 324, 330–31 (Tex.Crim.App.1992), noted a quote from Chief Justice Rehnquist in *Payne v. Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720, 736–37 (1991):

*Stare decisis* is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process. [Citations omitted.] Adhering to precedent "is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right." [Citations omitted.]

The court also noted: "Chief Justice Rehnquist listed several exceptions in which the Supreme Court was not constrained to follow the doctrine of *stare decisis:* (1) constitutional cases, because in such cases "correction through legislative action is practically impossible;" (2) cases involving procedural and evidentiary rules, as opposed to cases involving property and contract rights, where reliance interests are the greatest; (3) opinions

---

1. If that was true in 1977, it is even more so today. Law enforcement personnel are better trained, better educated and more professional than at any time in our history. This, and the increased risks these underpaid, overworked public servants face everyday, most certainly has lead to more respect and gratitude from the general public.

2. The record does not reflect if Patrolman Young was in uniform when he testified. If so, that fact, also carries weight with the average juror.

3. Dare I say "precedent"?

decided by narrow margins involving "spirited dissents" challenging the basic underpinnings of those decisions; (4) decisions which were questioned by members of the Court in later decisions; and (5) decisions that have defied consistent application by the lower courts. *Id.* at [828–831, 111 S.Ct. at] 2610–2611."

In *Texas Dep't of Human Services v. Penn,* 786 S.W.2d 28, 30 (Tex.App.-Beaumont 1990, writ denied), Chief Justice Walker, the majority writer, stated: "... *stare decisis* must be the "Rosetta Stone" with which to guide us in our application of the statutory language to the probative evidence"[4] and went on to follow cases from the Supreme Court and other courts of appeal in reaching this court's decision.

The majority, rather than determine why the reasons for stare decisis enumerated in *Weiner v. Wasson* and by Chief Justice Rehnquist in *Payne v. Tennessee do not apply* or if any of the exceptions to stare decisis noted in *Ex parte Porter do apply,* simply chooses to "distinguish" *Clark* and *Brown,* rather than follow or overrule them. This only increases uncertainty and decreases predictability in our Ninth Judicial District.

Having concluded it was error to allow Patrolman Young to testify as an expert, did that error amount to such a denial of the rights of Mrs. Sciarrilla as was calculated to cause and probably did cause the rendition of an improper judgment? *See* Tex.R.App. P. 81(b)(1). In my view, it did. When Young was asked to give his opinion "as to how this accident occurred," he not only gave the opinion that Mrs. Sciarrilla left the roadway to the right, came back upon the roadway, left the roadway for the right up on the gravel or the shoulder and flipped over; he used "buzz" words and phrases such as *"lost control* of the vehicle," *"panicked to some extent," "overcorrected to the left,"* "attempted to regain control of her vehicle," and *"jerked* over to the right."

4. Since the Chief Justice did not expound on the "Rosetta Stone" in his original opinion, I shan't either.

5. The record indicates venire persons Harvill and Waits asked the questions.

I must also dissent to the disposition of point of error three. Under point of error two, the majority correctly held that based on the objections made at trial, the trial court did not err in admitting the patrolman's written report. The admission of that report has a definite bearing on point of error three. Clearly two members of the jury panel[5] were interested in who was given traffic citations because, during voir dire, they asked Mrs. Sciarrilla's attorney about citations and tickets.[6] Furthermore, patrolman Young in response to questions by Osborne's attorney, testified:

Q Officer, under the traffic laws of the state of Texas, is a vehicle required to maintain a single lane?

A Yes, ma'am.

Q Was their [sic] physical evidence at the scene that indicated Mrs. Sciarrilla had not—had failed to maintain a single lane?

A Yes, ma'am.

. . . .

Q Also, is a driver required to maintain proper control of their vehicle?

A Yes, ma'am.

Q And that's something they're required to do at all times, is that correct?

A That's correct.

Q And according to what you just told us, the physical evidence, you were able to trace the path of Mrs. Sciarrilla's vehicle; is that right?

A To an extent, yes, ma'am.

Q Based on the path you were able to trace, did that vehicle—was that driver—did that driver maintain proper control of their [sic] vehicle?

A Did not appear so.

After each set of questions, the next logical exchange is:

Q And did you give Mrs. Sciarrilla a citation?

A Yes, ma'am.

6. It is not shown whether these venire persons served on the jury, since the jury list was not included in the transcript and the foreperson was neither of the venire persons.

Of course, this exchange did not occur literally.[7] However, I contend, it did occur, in fact. Jurors are not mindless robots who only take a literal input, analyze that input without reference to logical inferences, life experiences and common sense and produce a literal output. Every reasonable, logical juror would conclude, and rightfully so, when a Texas Department of Public Safety Highway Patrolman testifies *what* the law is and a person *did not obey* the law, then that Trooper would and *did* issue that person a citation. Furthermore, Young's written report showed "factors and conditions listed are the investigator's opinion" and "factors/conditions contributing" listed Mrs. Sciarrilla's vehicle as "failed to drive in single lane" and "faulty evasive action." These notations fortified his opinion that Mrs. Sciarrilla had violated the traffic laws and was at fault. The majority notes all references to traffic citations were redacted. While this is true, the redactions not only obliterated the typed words, but obliterated portions of the preprinted lines. Once again, it does not take Sherlock Holmes to figure out something had been there and that something could have only been Mrs. Sciarrilla's name since Young did not attribute any violations or fault to Osborne. Consequently, not only was the question of Young's opinion about negligence and causation before the jury, but the question of his opinion about violations of the traffic laws also. Thus his entire credibility was certainly before the jury.

Ordinarily acquittals in criminal actions are not admissible as evidence in subsequent civil proceedings involving common fact issues. *See State v. Benavidez*, 365 S.W.2d 638, 641 (Tex.1963); *accord American Gen. Fire and Cas. Co. v. McInnis Book Store, Inc.*, 860 S.W.2d 484, 487 (Tex.App.—Corpus Christi 1993, no writ). However, when one party offers evidence which is inadmissible (Young's testimony that Mrs. Sciarrilla had violated the law), the "door is open" and the other party is entitled to meet the evidence. SEE MCCORMICK, EVIDENCE § 57, at 229 (4th ed.1992). Mrs. Sciarrilla should have been able to counteract the effect of Young's testimony. Evidence that Mrs. Sciarrilla had been found "not guilty" of the citations was relevant because it tended to offset the prejudice caused by Osborne's evidence.[8] *See Carter v. Exxon Corp.*, 842 S.W.2d 393, 400 (Tex.App.—Eastland 1992, writ denied). I would sustain this point of error.

It was error to allow the jury to decide this case on evidence that should have been excluded, Young's opinion testimony. That error was compounded when other evidence was then excluded, Mrs. Sciarrilla's acquittal. Consequently, this case should be reversed and remanded for a new trial.

---

**7.** Osborne's motion in limine regarding the mention of the Justice of the Peace trial or the disposition of the traffic citation had been granted by the trial court.

**8.** The difference between the criminal and civil burdens of proof go to the weight rather than the admissibility.