

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-10-00082-CV

_____


GLORIA LOPEZ-JUAREZ, INDIVIDUALLY AND AS
EXECUTRIX OF THE ESTATE OF ALEJANDRO JUAREZ,
DECEASED, AND AS NEXT FRIEND OF
GLORIA ALEJANDRA JUAREZ, Appellant

V.

HUEY KELLY, D/B/A KELLY TOURS, Appellee



On Appeal from the County Court at Law
Gregg County, Texas
Trial Court No. 2006-1055-CCL2



Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

Alejandro Juarez was traveling westbound on Interstate 20 in Gregg County when his vehicle was rear-ended by a vehicle driven by Michael A. Weisheit.[1] Juarez's vehicle careened to the left side of the median into the left eastbound lane of Interstate 20. Juarez, though, did not suffer any fatal or catastrophic injuries from the initial collision. Juarez's vehicle was then struck by an eastbound tour bus owned by Huey Kelly, d/b/a Kelly Tours, and being driven by Andrew Johnson, an employee of Kelly Tours.[2] Juarez died as a result of this second collision.

Juarez's wife, Gloria Lopez-Juarez brought suit against Ford Motor Company, Huey Kelly, d/b/a Kelly Tours, Michael A. Weisheit, and Beverly Woolsey Goble, individually, as executrix of Juarez's estate, and as next friend of Gloria Alejandra Juarez, Juarez's daughter. Only the allegations against Huey Kelly, d/b/a Kelly Tours (Kelly Tours) proceeded to trial. Lopez-Juarez's suit, under the Texas Wrongful Death Statute and Texas Survival Statute, alleged negligence, negligence per se, gross negligence, negligent entrustment, and negligent hiring. The trial court admitted, over objection, the opinion testimony of Trooper Colby Hobbs, a police officer who investigated the accident. The trial court denied the requested instruction on

---

[1]Weisheit's vehicle was then struck by a vehicle driven by Beverly Woolsey Goble.

[2]It was drizzling and visibility was poor.

negligence per se.[3]   The jury found Weisheit solely responsible for the accident.   The trial court granted judgment in favor of Kelly Tours.

Lopez-Juarez raises two issues on appeal.   She argues the trial court erred in admitting the expert testimony of Hobbs and erred in denying the instruction on negligence per se.   Kelly raises a counter-issue that Lopez-Juarez failed to request the appropriate relief in her appellant's brief. We conclude that Lopez-Juarez could amend the relief originally requested in her appellant's brief.   We also conclude the trial court abused its discretion in admitting the opinion testimony of Hobbs concerning causation and negligence because, under the facts of this case, Hobbs lacked the qualifications to testify as an expert.   However, we affirm the judgment of the trial court because the error did not result in reversible error and the trial court did not err in denying the requested instruction on negligence per se.

## I.      Requested Relief May Be Amended

In her appellant's brief, Lopez-Juarez requests "that this court reverse and render judgment for her damages and attorney fees."   In his appellee's brief, Kelly argues this error prevents this Court from granting relief.   Kelly also argues that Lopez-Juarez cannot amend her brief or request a remand in a reply brief.   Lopez-Juarez has filed a motion requesting leave to file an amended brief, which requests a remand, and has requested a remand in her reply brief.   Kelly has filed a response to the motion to amend objecting to Lopez-Juarez's request.

---

[3]Johnson did not possess a valid medical examiner's certificate as required by law.

The appropriate relief for both issues raised by Lopez-Juarez would be a remand. If the admission of Hobbs' testimony is reversible error, the appropriate relief would be a reversal and remand for new trial. *See, e.g.*, *In re Estate of Arndt*, 187 S.W.3d 84, 88 (Tex. App.—Beaumont 2005, no pet.). If the trial court committed reversible error in denying the requested instruction on negligence per se, the appropriate relief would be a reversal and remand for a new trial. *See, e.g.*, *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000). A court should not grant relief which has not been requested by the prevailing party. *Horrocks v. Tex. Dep't of Transp.*, 852 S.W.2d 498, 499 (Tex. 1993); *In re Estate of Wilson*, 252 S.W.3d 708, 715 (Tex. App.—Texarkana 2008, no pet.). When a party has only requested rendition, but the appropriate relief for a party's issue is a remand for a new trial, an appellate court cannot grant a new trial. *Stevens v. Nat'l Educ. Ctrs., Inc.*, 11 S.W.3d 185, 186 (Tex. 2000); *W. End API, Ltd. v. Rothpletz*, 732 S.W.2d 371, 374 (Tex. App.—Dallas 1987, writ ref'd n.r.e.).

The Texas Rules of Appellate Procedure provide that a brief "may be amended or supplemented whenever justice requires, on whatever reasonable terms the court may prescribe." TEX. R. APP. P. 38.7. The sole change in the amended brief is that Lopez-Juarez is now requesting a remand. Kelly argued in the appellee's brief that the appellant's brief cannot be amended, citing seventeen cases which hold new issues cannot be raised in a reply brief.[4] In his response, Kelly

---

[4]*See, e.g.*, *Ratcliff v. LHR, Inc.*, No. 09-07-00566-CV, 2009 WL 1474725, at \*5 n.1 (Tex. App.—Beaumont May 28, 2009, pet. denied) (mem. op.); *Anchia v. DaimlerChrysler AG*, 230 S.W.3d 493, 500 n.1 (Tex. App.—Dallas 2007, pet. denied); *Campbell v. Stucki*, 220 S.W.3d 562, 570 (Tex. App.—Tyler 2007, no pet.); *Ledig v. Duke Energy Corp.*, 193 S.W.3d 167, 177 n.8 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Lefton v. Griffith*, 136 S.W.3d 271, 274 (Tex.

4

argues justice does not require amendment and argues he has been prejudiced because he has spent time briefing the issue.

The cases relied upon by Kelly are distinguishable because these cases concern new issues, not new prayers. A prayer is a formality—albeit an important formality. The Austin Court of Appeals has considered this exact issue and concluded the prayer could be amended. *See Majeed v. Hussain*, No. 03-08-00679-CV, 2010 Tex. App. LEXIS 8477 (Tex. App.—Austin Oct. 22, 2010, no pet.) (mem. op.) (concluding failure to request appropriate relief could be cured). The Austin court reasoned the prayer could be amended because the rules provide briefs can be amended,[5] briefing requirements should be construed "liberally" and "substantial compliance" is sufficient,[6] Rule 43.3 instructs appellate courts, "[w]hen reversing a trial court's judgment," to "render the judgment that the trial court should have rendered, except when: (a) a remand is

App.—San Antonio 2004, no pet.); *Zamarron v. Shinko Wire Co.*, 125 S.W.3d 132, 139 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *In re A.M.*, 101 S.W.3d 480, 486 (Tex. App.—Corpus Christi 2002), *rev'd on other grounds*, 192 S.W.3d 570 (Tex. 2006); *Barnes v. SWS Fin. Servs.*, 97 S.W.3d 759, 761 n.3 (Tex. App.—Dallas 2003, no pet.); *JHC Ventures, L.P. v. Fast Trucking, Inc.*, 94 S.W.3d 762, 773 n.9 (Tex. App.—San Antonio 2002, no pet.); *Sunbeam Envtl. Servs. v. Tex. Workers' Comp. Ins. Facility*, 71 S.W.3d 846, 851 (Tex. App.—Austin 2002, no pet.); *City of El Paso v. Public Util. Comm'n of Tex.*, 839 S.W.2d 895, 925 (Tex. App.—Austin 1992), *aff'd in part, rev'd in part on other grounds*, 883 S.W.2d 179 (Tex. 1994); *Brentwood Fin. Corp. v. Lamprecht*, 736 S.W.2d 836, 846 n.3 (Tex. App.—San Antonio 1987, writ ref'd n.r.e.); *Gabriel v. Snell*, 613 S.W.2d 810, 813 (Tex. App.—Houston [14th Dist.] 1981, no writ); *Acreman v. Sledge*, No. 07-02-0238-CV, 2003 WL 103203, at *2 (Tex. App.—Amarillo Jan. 10, 2003, no pet.) (mem. op.); *Walker v. TDCJ-ID*, No. 07-00-0450-CV, 2001 WL 946503, at *3 n.1 (Tex. App.—Amarillo Aug. 16, 2001, no pet.) (not designated for publication); *see Anderson Producing, Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 424 (Tex. 1996).

[5]TEX. R. APP. P. 38.7.

[6]TEX. R. APP. P. 38.9; *Verburgt v. Dorner*, 959 S.W.2d 615, 616–17 (Tex. 1997) ("[W]e have instructed the courts of appeals to construe the Rules of Appellate Procedure reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to effect the purpose of a rule.").

necessary for further proceedings; or (b) the interests of justice require a remand for a new trial,"[7]

and the rules contemplate that appellate courts afford parties the opportunity to cure any formal or

substantive briefing defects before disposing of the appeal based on such a defect rather than the

merits.[8]

We agree with the Austin Court of Appeals that a prayer can be amended. We grant

Lopez-Juarez's motion for leave to amend her appellant's brief and overrule Kelly's counter-issue.

## II.    Hobbs' Opinion Testimony as Expert Testimony

Lopez-Juarez's first issue challenges the admissibility of Hobbs' testimony concerning the

causation of the accident. Lopez-Juarez argues Hobbs was not qualified[9] to testify as an expert

on accident causation and the error in admitting Hobbs' testimony was reversible error.

---

[7]TEX. R. APP. P. 43.3; *see Wilson*, 252 S.W.3d at 715 (remanding based on legal sufficiency in interests of justice when party only requested a remand and facts not fully developed).

[8]TEX. R. APP. P. 44.3 ("A court of appeals must not affirm . . . for formal defects or irregularities in appellate procedure without allowing a reasonable time to correct or amend the defects or irregularities.").

[9]In her appellant's brief, Lopez-Juarez only challenges the qualifications of Hobbs. Lopez-Juarez did not challenge the reliability of Hobbs' testimony in her appellant's brief. In her reply brief, Lopez-Juarez argued Hobbs' testimony contained analytical gaps. We note, in addition to the expert being qualified, an expert's opinion must also be reliable. The reliability requirement of Rule 702 focuses on the principles, research, and methodology underlying an expert's conclusions. *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995). "The court's ultimate task, however, is not to determine whether the expert's conclusions are correct, but rather whether the analysis the expert used to reach those conclusions is reliable and therefore admissible." *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 239 (Tex. 2010) (citing *Zwahr*, 88 S.W.3d at 629). In an accident reconstruction case, the focus of the reliability inquiry should be on whether "any significant analytical gaps in the expert's opinion" exist. *TXI Transp. Co.*, 306 S.W.3d at 235. We further note that evidence that is not reliable is "not only inadmissible but incompetent as well." *City of Keller v. Wilson*, 168 S.W.3d 802, 813 (Tex. 2005). Because we find Hobbs lacked the qualifications necessary to testify as an expert to causation and negligence in this case, it is not necessary to express an opinion concerning the reliability of Hobbs' expert opinion.

6

Prior to trial, Lopez-Juarez filed a trial brief challenging the admissibility of Hobbs' testimony. Lopez-Juarez argued Hobbs was "not qualified to offer lay or expert testimony as to any opinions regarding the accident." Outside the presence of the jury, Lopez-Juarez objected to the admissibility of Hobbs' testimony and obtained a ruling. *See* TEX. R. EVID. 103. The trial court sustained Lopez-Juarez's objection in part and restricted Hobbs' testimony to opinions unrelated to vehicle speed. The trial court, however, overruled the remainder of Lopez-Juarez's objection and held that Hobbs' testimony as to causation was admissible. The trial court stated,

> I have read the case law, read the complete deposition of Trooper Hobbs. Case law indicates that somebody with Trooper Hobbs' training, and he does -- while he does limit it at first, he later talks about over the numerous accidents and fatality accidents he's investigated in his career, starting in Bay City and also with training through the Smith County Sheriff's Department.
>
> Based on the case law, which a couple of cases say a Level 2 is sufficient, I'm going to have to allow his testimony on those issues. I am going to limit -- I don't think he has training to do the speed calculations, but as to the rest of it, he can give his opinion. And then there's lots of cross-examination material available for Trooper Hobbs through those depositions. So I'm going to allow it.

The trial court later clarified that "how [Hobbs] believes the accident happened" was admissible.

At trial, Kelly introduced deposition excerpts, during which Hobbs testified concerning the causation of the accident. Hobbs testified[10] that Johnson had only seconds to react to a "sudden emergency" and that Hobbs "believe[d] he did the right thing . . . ." Hobbs opined that Johnson's

---

[10]Hobbs testified at trial by video deposition and written deposition. At times during the trial, the parties could not get the video deposition to play and read excerpts to the jury. Elsewhere, video excerpts were played for the jury. The record contains a transcript of Hobbs' entire deposition and a list of which lines were played before the jury.

actions did not contribute to or cause the accident and that Weisheit was responsible for the collision.

This case requires consideration of two different Rules of Evidence—Rule 701, which governs lay opinions, and Rule 702, which governs expert opinions. Rule 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

TEX. R. EVID. 701. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

TEX. R. EVID. 702. We note that opinion testimony is not objectionable because it embraces an ultimate issue.[11] TEX. R. EVID. 704.

### A. Hobbs' Testimony Contained Opinions

We begin by noting that not all of Hobbs' testimony was opinion testimony. Most of the testimony involves descriptions of witness statements and descriptions of the physical evidence, including the damage to the vehicles, the position of the vehicles, and conditions of the roadway.

---

[11]Rule 704 provides: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." TEX. R. EVID. 704. Historically, under the common law, expert witnesses were prohibited from testifying as to the ultimate issues which invade the province of the jury. FED. R. EVID. 704 advisory committee's note (LEXIS current through June 29, 2011); *see Cole v. Waite*, 246 S.W.2d 849, 852 (Tex. 1952) ("Whether she understood the nature and effect of executing the deed was the ultimate issue for the jury to determine, hence no witness could properly testify to that."); *Schutz v. State*, 957 S.W.2d 52, 78 (Tex. Crim. App. 1997).

Such testimony is not opinion testimony. Hobbs, though, also provided opinions concerning how the wreck occurred. Hobbs described a number of conclusions he reached concerning the movements of the vehicles during the accident. He described his opinions concerning the movement of Juarez's vehicle after the collision with Weisheit, the movement of Goble's vehicle and Weisheit's vehicle before and after they collided, and the movement of Juarez's vehicle after it collided with the bus. These conclusions were Hobbs' opinion—not merely a recitation of witness statements or personal observations.

Hobbs also testified concerning whether Johnson was negligent. Hobbs testified Johnson had only seconds to react to a "sudden emergency" and that he "believe[d] he did the right thing . . . ." Hobbs opined that Johnson's actions did not contribute to or cause the accident and that Weisheit was responsible for the collision. Hobbs testified as follows:

> Q [Kelly's attorney] Are you able to characterize how much reaction time you believe Andrew Johnson, the driver of the tour bus, had to react to the presence of Mr. Juarez's vehicle?
>
> A [Hobbs] Probably, just seconds. . . . I believe that no more than just a few seconds from what he - - from him being in the fast lane, he only had a couple of seconds to actually -- when the truck -- If you're asking my opinion on what his reactions were to the -- I believe he did all he could do to avoid the situation.
>
> Q Do you believe that we're talking a very brief period of time, between the time he would have noticed the vehicle in the median and the time he could have thought to apply his brakes?
>
> A Just probably seconds.

9

Q        Okay.  Do you believe that the bus driver, Andrew Johnson was presented with a sudden emergency there on the roadway?

. . . .

A        It was either go into the median -- I can't testify to say if he had traffic around him, but from what I would gather that day there was a lot of traffic on the interstate.   So he'd either go into the right lane and have a collision or go into the median or he could stay in his lane.   I believe he did the right thing and just kind of - - being as he had passengers on the bus, so . . .

Q        Do you believe that Andrew Johnson's actions caused or contributed to cause this accident?

. . . .

A        Do I believe -- Say that one more time.

Q        That the bus driver, Andrew Johnson -- Do you believe his actions caused or contributed to cause this accident?

. . . .

A        No, sir.

Q        Do you believe that Andrew Johnson responded appropriately when faced with a vehicle coming into his lane of traffic?

A        Yes, sir.   I believe he did the best he could without stopping.  Evidently he couldn't stop in time, but I believe he did what he -- to avoid the accident, and like I said into the slow lane or taking the chance of putting his bus into the median.   I believe he did what he could do.   He did the best of his abilities.

Q        In his statements, Andrew Johnson stated that he applied his brakes and tried to maintain vehicle control in his lane, do you believe that was appropriate evasive action given his vehicle and situation he was faced with?

10

A     Yes, sir.

. . . .

Q     Did you find that Andrew Johnson bears any responsibility for this accident?

. . . .

A     No, sir.   I don't.

Q     And why not?

A     Because basically he was just faced with -- I mean, the car was coming over at the last minute.   I believe he saw it and he applied his brakes and did what he could do to avoid the vehicle, and just more or less the impact from the truck hitting his bus is what caused basically the death.

Q     Which drivers' actions do you believe are responsible for causing this collision?

. . . .

A     I believe it was Mr. Weisheit's rear-end collision that forced him to cross the median striking the bus.

To the extent Hobbs' testimony concerned his observations of the physical evidence and the conditions of the scene, the testimony was clearly admissible.   Hobbs, though, was also requested to express a number of opinions concerning accident reconstruction.    These conclusions did not describe Hobbs' observations, but rather described Hobbs' opinions.

**B.     Hobbs' Opinion Testimony Does Not Qualify as Lay Opinion Testimony**

11

The next question is whether the opinion testimony qualifies as lay witness opinion testimony under TEX. R. EVID. 701. This inquiry depends on whether the opinions expressed were based on the witness' perceptions. Both the Texas Supreme Court and this Court have noted that experts do not necessarily testify as expert witnesses and that expert witnesses may testify as lay opinion witnesses if their opinion is based on personal perception.[12] *Reid Rd. Mun. Util. Dist. No. 2*, 337 S.W.3d 846; *Hathcock v. Hankook Tire Am. Corp.*, 330 S.W.3d 733, 747 (Tex. App.—Texarkana 2010, no pet.); *see also Anthony Equip. v. Irwin Steel Erectors, Inc.*, 115 S.W.3d 191 (Tex. App.—Dallas 2003, pet. dism'd) (Although police officer did not qualify as an expert, he "could testify as a lay witness concerning his observations of the accident.").

A lay witness may testify to opinions "which are 1) rationally based on the perception of the witness and 2) helpful to an understanding of his testimony or a determination of the fact at issue." *Havner v. E-Z Mart Stores*, *Inc.*, 825 S.W.2d 456, 464–65 (Tex. 1992); *see* TEX. R. EVID. 701. The Texas Court of Criminal Appeals has provided a detailed analysis of this rule in *Fairow v. State*, 943 S.W.2d 895 (Tex. Crim. App. 1997). The requirement that an opinion be rationally based on the perceptions of the witness is composed of two parts: (1) "the witness must establish

---

[12]The Texas Supreme Court noted that Rule 701 of the Federal Rules of Evidence has been amended to prohibit lay witnesses from giving opinion testimony concerning scientific, technical, or other specialized knowledge. *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846 (Tex. 2011). While noting the Texas Rules of Evidence have not been similarly amended, the Texas Supreme Court cautioned that "the same concern—that expert testimony will be offered as evidence without meeting the reliability requirements of Rule 702—underlies our opinion." *Id*. at 851 n.2.

personal knowledge of the events from which his opinion is drawn"; and (2) "the opinion drawn must be rationally based on that knowledge." *Id*. at 898.

"An opinion will satisfy the personal knowledge requirement if it is an interpretation of the witness's objective perception of events." *Id*. at 899. While Hobbs observed the accident scene after the accident, he did not observe the accident. "Rule 701's requirement that the testimony be based on the witness's perception presumes the witness observed or experienced the underlying facts." *Bd. of Trs. of Fire & Police Retiree Health Fund v. Towers*, *Perrin*, *Forster & Crosby*, *Inc.*, 191 S.W.3d 185, 193 (Tex. App.—San Antonio 2005, no pet.) (quoting *Turro v. State*, 950 S.W.2d 390, 403 (Tex. App.—Fort Worth 1997, pet. ref'd)). Thus, any lay opinion must be rationally based on Hobbs' observations of the accident scene, because he did not personally observe the accident.

"An opinion is rationally based on perception if it is an opinion that a reasonable person could draw under the circumstances." *Fairow*, 943 S.W.2d at 900. The accident in this case involved multiple vehicles and multiple collisions. Any lay person who observes an accident scene involving skid marks and the final resting places of the vehicles may have an opinion as to what occurred and who was at fault. But such an opinion is not based on a computation of the speed of the vehicles, or the reaction time at such speed, and ultimately involves speculation. While Hobbs was certainly more experienced than the average lay person, no evidence was

13

presented that he was trained to convert the physical findings and translate them into movement of the vehicles, reaction time, and causation of the accident.[13]

Hobbs' opinion testimony was not based solely on his perceptions of the accident scene. Therefore, the testimony was not admissible as lay opinion testimony.[14] In order to be admissible, the testimony must have qualified as an expert opinion.[15]

### C. Hobbs' Qualifications as an Expert Witness

This brings us to the question of whether Hobbs was qualified to render expert testimony. Lopez-Juarez argues Kelly failed to prove Hobbs was qualified. Kelly argues police officers with a Level II certification always qualify as experts. Because Hobbs had a Level II certification, Kelly argues he was qualified.

The party calling the potential witness has the burden to show that the potential witness is an expert witness. *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997). Testimony on accident causation must be given by a qualified person in that science. *Pilgrim's Pride Corp.*,

---

[13]Kelly argues, similar to this Court's opinion in *Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 891 (Tex. App.—Texarkana 2004, pet. denied), that expert testimony is not required. *Pilgrim's Pride* concerned a relatively simple two-vehicle accident. *Id.* at 893. This case is a multiple vehicle accident. Four different vehicles were involved, three different collisions occurred, the witness accounts of the accident differed, and the determination of fault depends on complex physics calculations. The complexity of the accident at issue mandates additional expertise to establish causation. We conclude *Pilgrim's Pride* is factually distinguishable from this case.

[14]A lay opinion not based on the witness' perception is inadmissible because "[m]ere conjecture does not assist the jury." *Bd. of Trs. of Fire & Police Retiree Health Fund*, 191 S.W.3d at 193–94 (quoting *Fairow v. State*, 920 S.W.2d 357, 361 (Tex. App.—Houston [1st Dist.] 1996), *aff'd*, 943 S.W.2d 895 (Tex. Crim. App. 1997)).

[15]"The expert is in effect not telling of facts at all, but of uniform physical rules, natural laws, or general principles, which the jury must apply to the facts." *Parker v. Employers Mut. Liab. Ins. Co. of Wis.*, 440 S.W.2d 43, 46 n.5 (Tex. 1969) (quoting Hand, "Historical & Practical Considerations Regarding Expert Testimony," 15 HARV. L. REV. 40, 50 (1901)).

14

134 S.W.3d at 891; *Gainsco County Mut. Ins. Co. v. Martinez*, 27 S.W.3d 97, 104 (Tex. App.—San Antonio 2000, pet. dism'd by agr.).

We review the admission of expert witness testimony for an abuse of discretion. *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230, 236 (Tex. App.—Texarkana 2005, no pet.). Under an abuse of discretion review, we are not free to substitute our own judgment for the county court's judgment. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). We, however, do not give absolute deference to the trial court's decision. "A court abuses its discretion if its decision is arbitrary, unreasonable, or without reference to guiding principles." *In re Gen. Elec. Co.*, 271 S.W.3d 681, 685 (Tex. 2008); *Ne. Tex. Staffing v. Ray*, 330 S.W.3d 1, 3 (Tex. App—Texarkana 2010, no pet.). The Texas Supreme Court has noted the abuse of discretion standard "is similar, although not identical, to the federal standard of 'clearly erroneous.'" *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997).

The qualification of an expert witness is governed by TEX. R. EVID. 702. *SunBridge Healthcare*, 160 S.W.3d at 237. An expert's testimony is admissible if (1) the expert witness is qualified to testify about "scientific, technical, or other specialized knowledge," and (2) the testimony is relevant and based upon a reliable foundation. *TXI Transp. Co.*, 306 S.W.3d at 234; *Zwahr*, 88 S.W.3d at 628; *SunBridge Healthcare*, 160 S.W.3d at 237.

15

Texas courts have permitted police officers to testify concerning accident reconstruction in some cases,[16] but have concluded police officers were not qualified in other cases.[17] This Court has held:

> As a general rule, police officers, based on their position as police officers alone, are not qualified to render opinions regarding accidents. However, police officers are qualified to testify regarding accident reconstruction if they are trained in the science and possess the high degree of knowledge sufficient to qualify as an expert. No definite guidelines exist for determining whether a particular witness possesses the knowledge, skill, or expertise to qualify as an expert.

*Pilgrim's Pride*, 134 S.W.3d at 891–92 (citations omitted).

The inconsistency of the caselaw is due to the fact that different accidents require different levels of expertise. In *Brown v. State*, the Tyler Court of Appeals held that mathematical modeling is not required in all accident reconstructions. 303 S.W.3d 310, 319–21 (Tex.

---

[16]*See, e.g.*, *Trailways, Inc. v. Clark*, 794 S.W.2d 479, 483 (Tex. App.—Corpus Christi 1990, writ denied) (officer allowed to testify regarding speed of bus based on skid marks and its contribution to cause of accident); *Rainbo Baking Co. v. Stafford*, 764 S.W.2d 379, 382–83 (Tex. App.—Beaumont 1989), *writ denied*, 787 S.W.2d 41 (Tex. 1990) (since driver admitted acts of negligence, permitting officer to testify there was no reason for accident to occur was not error, but was a shorthand rendition of facts); *DeLeon v. Louder*, 743 S.W.2d 357, 359 (Tex. App.—Amarillo 1987), *writ denied*, 754 S.W.2d 148 (Tex. 1988) (officer with "accident reconstruction training" held to be qualified to testify regarding cause of accident); *Rogers v. Gonzales*, 654 S.W.2d 509, 513–14 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.) (officer qualified to testify regarding speed based on skid marks).

[17]*See, e.g.*, *Lopez v. So. Pac. Transp. Co.*, 847 S.W.2d 330, 335 (Tex. App.—El Paso 1993, no writ) (officer not qualified to testify regarding cause of accident where there was no showing of specialized knowledge in accident reconstruction); *St. Louis Sw. Ry. Co. v. King*, 817 S.W.2d 760, 763 (Tex. App.—Texarkana 1991, no writ) (court did not abuse its discretion in excluding officer's testimony regarding cause of accident); *Hooper v. Torres*, 790 S.W.2d 757, 760–61 (Tex. App.—El Paso 1990, writ denied) (officer not qualified to testify as to cause of accident because he was not accident reconstructionist); *Bounds v. Scurlock Oil Co.*, 730 S.W.2d 68, 71 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.) (officer not qualified to express opinion on cause of accident where he was not accident analyst or reconstruction expert).

App.—Tyler 2009, pet. ref'd). We agree with this proposition. In simple accidents, the accident reconstruction can be conducted without mathematical modeling.

There should not be any per se rules of admissibility. Whether a police officer is qualified depends on the facts of each case. The Texas Supreme Court has observed that the offering party must establish that the expert has knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject. *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996). The expert's expertise must be measured against the particular opinion the expert is offering. *See id.* While a police officer may possess sufficient knowledge, skill, or expertise for one case, another case might require a greater degree of expertise. As this Court stated in *Pilgrim's Pride*, there are "[n]o definite guidelines." *Pilgrim's Pride*, 134 S.W.3d at 892. We refuse to recognize a per se rule that the testimony of a police officer with a Level II certification is always admissible expert testimony. Whether a police officer possesses sufficient expertise must be evaluated under the facts of each case and the specific issue on which the expert testimony is proffered. In simple accidents, the accident reconstruction can be conducted without mathematical modeling.

Kelly argues—based on two memorandum opinions of the Waco Court of Appeals—that the testimony of a police officer with a Level II certification is admissible as expert testimony. We decline to follow the two memorandum opinions of the Waco Court of Appeals and note that

17

one of the opinions was reversed on other grounds and the remaining opinion is factually distinguishable from this case.

In *Lingafelter v. Shupe*, the Waco court stated that "[t]he opinion of an investigating officer with level two reconstruction training is admissible." No. 10-03-00113-CV, 2004 Tex. App. LEXIS 10355, at *13 (Tex. App.—Waco Nov. 17, 2004) (mem. op.), *rev'd*, 192 S.W.3d 577 (Tex. 2006). We note *Lingafelter* is similar to the facts of this case and was a complex accident. The accident was initially a rear-end collision where one vehicle swerved into the lane of oncoming traffic and was hit by a tractor-trailer. *Id*. at *2. *Lingafelter*, as acknowledged by Kelly, was reversed on other grounds by the Texas Supreme Court. *Shupe v. Lingafelter*, 192 S.W.3d 577 (Tex. 2006). While the Texas Supreme Court did not address the admissibility of the expert witness, it also did not approve of the Waco court's conclusions.

The other case relied upon by Kelly was *Dewbre v. Anheuser-Busch*, *Inc*., No. 10-08-00022-CV, 2008 Tex. App. LEXIS 9046 (Tex. App.—Waco Nov. 26, 2008, pet. denied) (mem. op.). In *Dewbre*, a driver was transporting beer when his load shifted and the truck rolled over. *Id*. The Waco court held that a trooper with a Level II certification could testify the accident was caused by the load shifting. *Id*. The opinion does not mention any evidence that any other vehicles were involved. *See id*. *Dewbre* does not contain any dicta that a police officer with a Level II certification always qualifies as an expert. Further, *Dewbre* is factually

distinguishable from the current case. Unlike the case here, *Dewbre* concerned a relatively simple accident.

This case involves multiple vehicles, multiple collisions, and can only be reconstructed with knowledge and skills exceeding the experience of most police officers. While most police officers may have sufficient experience to reconstruct a simple accident, they do not have the knowledge or experience to reconstruct a multiple vehicle accident which occurred at high speeds based on the position of the vehicles, air-bag deployment, and damage to the vehicles. Such complex accidents require mathematical modeling. Calculating the direction and speed of a vehicle after a collision is beyond the experience of most police officers. Without expertise in mathematical modeling, conclusions in an accident as complex as the accident at issue would be nothing more than mere speculation. We are not saying that a mathematical modeling of an accident is the only way to determine the cause of an accident. However, when an accident is sufficiently complex, mathematical modeling is required.

Kelly alternatively argues, under the facts of this case, that Hobbs had sufficient expertise to testify as an expert witness. Kelly cites *Sciarrilla v. Osborne*, 946 S.W.2d 919, 921 (Tex. App.—Beaumont 1997, pet. denied) (finding officer qualified when he had received training in taking "the weights of vehicles, where such vehicles come to rest, and us[ing] different types of formulas to calculate speed, direction of travel, and the like"). We conclude *Sciarrilla* is distinguishable because the police officer had greater expertise and the accident was less complex.

19

The police officer in *Sciarrilla* had taken "science and engineering courses in college," had "attended a three week advanced accident reconstruction school," and had investigated between "four hundred and five hundred accidents." *Id*. at 920–21. The police officer had a more extensive academic background than Hobbs and had double the experience in investigating accidents. In addition, S*ciarrilla* is distinguishable because the accident was less complex. In *Sciarrilla*, the plaintiff contended the defendant came into her lane, forced her off the road, and caused her vehicle to flip over. *Id*. at 923. *Sciarrilla* did not involve a multiple car accident and, thus, less expertise was required to analyze it.

In *Walker v. Rangel*, the Fourteenth District held the trial court abused its discretion in admitting the testimony of a police officer who was not qualified to testify as an expert witness. *Walker v. Rangel*, No. 14-08-00643-CV, 2009 Tex. App. LEXIS 9215 (Tex. App.—Houston [14th Dist.] Dec. 3, 2009, no pet.) (mem. op.). The court reasoned that the police officer had "received only basic training in accident investigation" and "admitted he is not an accident reconstruction expert." *Id*. at *9. The court noted the police officer had twenty years of experience and had investigated approximately 150 accidents, but noted the police officer "failed to explain how this experience imbued him with expertise in accident reconstruction." *Id*. at **8–9.

Similar to *Walker*, Hobbs did not have extensive training in accident reconstruction. Further, Hobbs disclaimed expertise. *See Pilgrim's Pride*, 134 S.W.3d at 890 (considering police officer's disclaimed expertise and finding in dictum that police officer not qualified to testify as

20

expert); *see also Lewis v. Hunter*, No. 05-01-01035-CV, 2002 Tex. App. LEXIS 2536 (Tex. App.—Dallas Apr. 10, 2002, pet. denied) (not designated for publication) (doctor who disclaimed expertise in psychology and had no direct knowledge of effect on patient not qualified).

Hobbs had worked for the Smith County Sheriff's Department from 1997 to 2002 as a jailer, bailiff, and courthouse security. Since 2002, he has worked for the Texas Department of Public Safety (DPS). Hobbs currently works for the Longview office of the DPS.[18] He testified he had extensive experience investigating accidents. Hobbs could not remember the exact number of accidents he had investigated, but estimated the number as somewhere between 100 to 240. Hobbs testified he had investigated four or five fatalities.

The record, though, does not establish Hobbs had extensive or specialized knowledge in accident reconstruction. While working for Smith County, Hobbs attended a police academy conducted by the Tyler Police Department. He completed a Level II certification in accident reconstruction through the DPS in Austin. Hobbs testified,

> For the one at the Sheriff's Department. The academy they sent us to in Tyler, TJC, Tyler Police -- Tyler PD put on, it was basically just the basics of how to fill out the, at the time, ST3s, accident report, just some minor investigations. And then when I went to the academy and DPS. They go through a lengthy Level II Certified Reconstruction. Pretty much just diagramming scenes, measuring, taping, painting and diagramming the scenes, and pretty much that's the only level -- I've only been to Level II. That's as far as I've been.

Hobbs testified he had never testified concerning accident reconstruction. When asked how many accidents he was "in charge of doing the reconstruction on," Hobbs responded,

---

[18]Hobbs also worked for the DPS field office in Bay City for a year and a half.

21

Actually, I don't -- I'm not necessarily in charge. All I do is measure. We go out and measure. They have a reconstruction team through 1B -- Region 1B that comes in, and if we have a high priority case, they will come in and reconstruct the scene for us, but that's a certain team that they use that are actual Level, I think VI. So five or six certifieds do that.

Basically all I'm eligible to do is go out -- once I mark the scene, after it's cleared, we come back later on and several of us troopers in the area will get our measuring tapes and we'll go out and measure points from where the actual vehicles were. And then you got the couple of troopers in the office that they put it through a power point on their laptops and print it off.

The record does not contain much evidence concerning the details of a Level II certification. Hobbs testified:

> Q [Lopez-Juarez's attorney] . . . . And what additional things about accident investigation or reconstruction do you learn in Level II as opposed to what you learn at Level I at the Academy?

> A [Hobbs] Level I was just basically how to do the reports, how to measure some of the scenes. Level II goes into again the diagramming, like in the sheet I have here. It goes into the velocity of the speeds, the vault formulas, if reaction times or skids . . . .

Later cross-examination revealed:

> Q [Lopez-Juarez's attorney] How many levels are there?

> A [Hobbs] I believe -- I don't want to lie here, but I believe there's six. Because I know III is a more detailed and they reconstruct -- they do the formulas of more in-depth, more mathematical problems. I think there's a IV. I want to say V is a [—] like a diagramming on the computer drawings. That's just -- You can go -- You go I, II, III. You can jump from II to V just to do the diagramming on the videos - - or the computer. But if you want to go through the whole thing, reconstruction, I want to say VI, but I'm not really for sure.

> Q And besides the more mathematical calculations, did you learn that in Level II, how to do the mathematical --

A       You learn the basics, skid and stuff like that. But usually if something to this nature, if something happens this big of a scale, we usually just call the reconstruction team, where they're all certified Level VI or V – VI, I believe and they come out and do everything.

Still later, Hobbs testified,

Q       [Lopez-Juarez's attorney]  . . . . How do you get to a different level on accident investigations with DPS?  Do you have to take classes?

A       [Hobbs]   Yes, sir.  You have to go -- They'll have training classes at the DPS in Austin.  You go down to Austin and they'll put you through a two-week or a three-week, whatever it is.  It's just like a regular course.  You go through and you have tests every other day or whatever it is.  And then I think you have like a semi-final and then a final, and then once you pass it -- I think actually what it is, when you go to -- say you're going from Level II to Level III, the first day you get there you have a test on pretty much Level I, II stuff.  And if you pass -- If you fail that test they send you home.
        So if you pass that one, then you'll continue the two to three weeks of training or whatever.  They want to make sure you still understand the stuff that you -- prior, before they even waste their time starting, so...  Level II is about as far as I want to go.  So it's math and all of that.  You got to be pretty smart to go through all the six levels.

Q       You don't like math too much?

A       No, sir.  I'm not really keen on the math.  That's why when it gets down to something this big, if we have to call -- we just call the reconstruction team out and they're experts at it, so...

Other than his Level II certification and experience, Hobbs does not have any additional qualifications.  He denied having any physics training or being an expert in physics:

23

Q      [Lopez-Juarez's attorney]   Now did you take any physic's [sic] classes in high school?

A      [Hobbs]   Physics?   Not that I can remember.   I took the regular pre-algebra and stuff.   But if you're asking me if I can testify expertly about -- no, sir.

Kelly argues that "Lopez-Juarez provides no reason, and there is no reason, why not being trained in physics should militate against him being qualified to testify as an expert in accident reconstruction in this case, particularly when he is certified at Level II."   We disagree.   The fact that an expert has never had any physics training is highly relevant.   Reconstruction of complex accidents is governed by physics.

Under the facts of this case, the trial court abused its discretion.   Kelly had the burden to establish Hobbs was qualified to testify as an expert.   Kelly failed to meet that burden.   While a police officer with a Level II certification may be qualified to testify as to causation in simple accidents—depending on the facts of the case—the certification of the police officer, by itself, is not determinative.   Hobbs disclaimed expertise and had never testified as an expert in accident reconstruction, and admitted his expertise was limited to measuring and diagramming an accident site.   He admitted he had no training in physics and disliked math.   While Hobbs was clearly qualified to testify concerning his measurements and diagrams, it was error for the trial court to conclude Hobbs was an expert on accident reconstruction.   The trial court's decision was an abuse of discretion.

**D.      Reversible Error Did Not Occur**

The next issue is whether the trial court's error is reversible.   An error in the admission of evidence is reversible if the error probably caused the rendition of an improper judgment.   TEX. R. APP. P. 44.1; *TXI Transp. Co.*, 306 S.W.3d at 242; *Southland Lloyd's Ins. Co. v. Tomberlain*, 919 S.W.2d 822, 828 (Tex. App.—Texarkana 1996, writ denied).   This test is not a "but for" test—the appellant needs to only prove that the error probably resulted in the rendition of an improper judgment.   *McCraw v. Maris*, 828 S.W.2d 756, 757–58 (Tex. 1992).   The Texas Supreme Court has recently noted:

> Probable error is not subject to precise measurement, but it is something less than certitude; it is a matter of judgment drawn from an evaluation of "the whole case from voir dire to closing argument, considering the 'state of the evidence, the strength and weakness of the case, and the verdict.'"

*TXI Transp. Co.*, 306 S.W.3d 242–43 (quoting *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008); *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 841 (Tex. 1979)). Whether an alleged error is deemed reversible normally will be determined from reviewing the entire record.   *Reinhart v. Young*, 906 S.W.2d 471, 473 (Tex. 1995).

The Texas Supreme Court has said that reversible error does not exist when the evidence erroneously admitted is cumlative and not controlling on a material issue that is dispositive of the case.   *See Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989) (stating "[t]his court will ordinarily not find reversible error for erroneous rulings on admissibility of evidence

where the evidence in question is cumulative and not controlling on a material issue dispositive of the case"); *Tomberlain*, 919 S.W.2d at 828.

Hobbs' conclusion that Johnson was not at fault was cumulative of other evidence. Two bus passengers testified Johnson was not at fault. William Nalle,[19] Kelly's expert, testified Johnson only had "1.3 to 2-point -- just over 2 seconds" to avoid the accident. Nalle testified it was a "physical impossibility" that Juarez's vehicle came to a stop. When asked if Nalle agreed with Hobbs that "there was nothing Mr. Johnson could have done to avoid this accident," he testified, "I absolutely agree with the trooper on that." Johnson testified he did not have time to swerve because "you can't make instant decisions with a bus." Johnson also testified none of the police officers were critical of his actions.

Lopez-Juarez argues Hobbs, as a disinterested nonretained expert tipped the balance in the battle of the two retained experts. Dirk Smith,[20] Lopez-Juarez's expert, testified that based on his calculations, Juarez's vehicle came to a stop in the left-hand, eastbound lane before being struck by the bus. Smith testified that if Juarez's vehicle had been moving at the speed calculated by Nalle, there would have been significantly more damage.[21] Johnson, in Smith's opinion, failed to keep a

---

[19]Nalle had a degree in mechanical engineering from the University of Texas and had been a registered professional engineer since 1979 or 1980.

[20]Smith had a undergraduate degree in mechanical engineering from Purdue University, a master's degree in mechanical engineering from the University of Southern California, and a Ph.D. in mechanical engineering from Purdue University. Smith became a registered professional engineer in 1994 or 1995. Smith was also a certified accident reconstructionist for the Accreditation Commission for Traffic Accident Reconstructionists.

[21]Smith criticized Nalle's barrier equivalent speed analysis and characterized it as "completely wrong."

proper lookout and was traveling too fast for the weather conditions. Smith testified this was not an unavoidable accident.

The Texas Supreme Court has stated that "[t]ypically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted." *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001); *see City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995) ("A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted."). The Texas Supreme Court has explained that

> whether erroneous admission is harmful is more a matter of judgment than precise measurement. In making that judgment, we have sometimes looked to the efforts made by counsel to emphasize the erroneous evidence and whether there was contrary evidence that the improperly admitted evidence was calculated to overcome.

*Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004) (citations omitted).

It is our opinion that Hobbs' testimony was merely cumulative and not controlling. Most of his testimony was not expert testimony. Nalle, Kelly's other expert witness, provided expert testimony consistent with Hobbs' conclusions. Nalle testified in much greater detail, length, and depth than Hobbs. Nalle explained the methods he used and the calculations he made. Compared to the lengthy and detailed expert testimony of Nalle and Smith, Hobbs' testimony was brief and unexplained. We cannot say that the admission of Hobbs' testimony caused the

rendition of an improper judgment. Although the trial court erred in permitting Hobbs to testify as an expert, the error did not result in reversible error.

## III.   The Requested Negligence Per Se Instruction

In her second point of error, Lopez-Juarez contends the trial court erred in denying her requested instruction on negligence per se. The requested instruction was submitted[22] to the trial court in writing as follows:

> The law forbids an individual from driving a commercial motor vehicle when that individual's medical examiner's certificate is expired. A failure to comply with this law is negligence in itself. As to HUEY KELLY d/b/a KELLY TOURS and ANDREW JOHNSON, a failure to comply is excused and not negligence if HUEY KELLY d/b/a KELLY TOURS and ANDREW JOHNSON neither knew nor should have known of the occasion for compliance.

The trial court overruled the requested instruction.

We review the refusal to submit the requested instruction for an abuse of discretion. *Shupe*, 192 S.W.3d at 579; *James v. Kloos*, 75 S.W.3d 153, 162 (Tex. App.—Fort Worth 2002, no pet.). When evaluating whether the trial court abused its discretion by refusing to submit a requested instruction, the focus of our review is whether the requested charge was reasonably necessary to enable the jury to render a proper verdict. *See* TEX. R. CIV. P. 277; *Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 912 (Tex. 2000); *Wilen v. Falkenstein*, 191 S.W.3d 791, 803 (Tex. App.—Fort Worth 2006, pet. denied).

---

[22]We are not expressing any opinion concerning whether the requested instruction was a substantially correct statement of law.

28

"Negligence per se is a tort concept whereby the civil courts adopt a legislatively imposed standard of conduct as defining the conduct of a reasonably prudent person." *Moughon v. Wolf*, 576 S.W.2d 603, 604 (Tex. 1978); *see Reeder v. Daniel*, 61 S.W.3d 359, 361–62 (Tex. 2001). "To establish negligence per se, a plaintiff must prove: (1) the defendant's act or omission is in violation of a statute or ordinance; (2) the injured person was within the class of persons which the ordinance was designed to protect; and (3) the defendant's act or omission proximately caused the injury." *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 265 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

The rules and regulations of the Federal Motor Carrier Safety Administration provide: "A person . . . must not operate a commercial motor vehicle unless he or she is medically certified as physically qualified to do so and . . . when on-duty has on his or her person the original, or a copy, of a current medical examiner's certificate that he or she is physically qualified to drive a commercial motor vehicle." 49 C.F.R. § 391.41 (LEXIS through 2011). The record contains evidence Johnson failed to possess a valid medical examiner's certificate. Johnson's medical certificate produced by Kelly expired three months before the accident.[23] A violation of the Federal Motor Carrier Safety Administration Rules is a class C misdemeanor. *See* TEX. TRANSP.

---

[23]Johnson testified he renewed his medical certificate but may not have given it to Kelly. The certificate produced by Kelly expired on January 13, 2004. Johnson could not explain why, after the accident, he had renewed his medical certificate on August 5, 2004. Johnson admitted he had not been able to produce a medical certificate which was valid at the time of the accident. Kelly also argues, because Johnson testified he had renewed the medical certificate, the trial court did not err in denying the requested instruction. Johnson's testimony, though, is not conclusive evidence that he possessed a valid medical certificate at the time of the accident.

CODE ANN. §§ 644.051, 644.151 (West 2011); 37 TEX. ADMIN. CODE § 4.11 (LEXIS through 2011). Kelly argues there is no evidence the statutory violation was the proximate cause of the accident.[24]

Lopez-Juarez argues there is evidence that Johnson's vision, hearing, or reflexes contributed to the accident. The violation of the statute or ordinance must be the proximate cause of the injury. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex. 1985); *Moughon*, 576 S.W.2d at 606; *see also Durham v. Zarcades*, 270 S.W.3d 708, 719–20 (Tex. App.—Fort Worth 2008, no pet.). To establish proximate cause, a plaintiff must prove two elements: cause-in-fact and foreseeability. *IHS Cedars Treatment Ctr. of Desoto*, *Tex.*, *Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). Cause-in-fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred. *Id*.

Smith, the plaintiff's expert, testified a person of reasonable vision, hearing, and reflexes could have avoided the accident. Smith, though, did not testify Johnson lacked reasonable vision,

---

[24]Kelly also challenges the first two factors of negligence per se, citing *Freudiger v. Keller*, 104 S.W.3d 294, 297 (Tex. App.—Texarkana 2003, pet. denied). Lopez-Juarez responds that these factors are met, citing *North American Van Lines, Inc.*, 50 S.W.3d 103, 123 (Tex. App.—Beaumont 2001, pet. denied). The Texas Supreme Court has held that courts must also decide whether it is appropriate to impose tort liability for alleged violations and directed us to consider a multitude of factors, including: whether the statute is the sole source of any tort duty from the defendant to the plaintiff, or whether it merely supplies a standard of conduct for an existing common-law duty; whether the statute puts the public on notice by clearly defining the required conduct; whether the statute would impose liability without fault, whether negligence per se would result in ruinous damages disproportionate to the seriousness of the statutory violation, particularly if the liability would fall on a broad and wide range of collateral wrongdoers; and whether the plaintiff's injury is a direct or indirect result of the violation of the statute. *Perry v. S.N.*, 973 S.W.2d 301, 308 (Tex. 1998). It is not necessary to decide this issue.

hearing, or reflexes. Lopez-Juarez's argument requires an inference that—because a person of reasonable vision, hearing, and reflexes could have avoided the accident—Johnson must have medical problems since he did not avoid the accident. In *North American Van Lines*, the unlicensed driver had impaired vision. 50 S.W.3d at 123. In this case, there is no evidence Johnson had impaired vision. There is too great an analytical gap—this "evidence" is nothing more than mere speculation. A "mere possibility" that the statutory violation caused the injury is legally insufficient to support a finding of causation. *Reinicke v. Aeroground, Inc.*, 167 S.W.3d 385, 389 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

Lopez-Juarez has not directed this Court to where in the record there is more than a scintilla of evidence that the violation of the Federal Motor Carrier Safety Administration Rules was the proximate cause of the occurrence. We have not been directed to any evidence that the accident was caused by a medical condition of Johnson. In the absence of evidence that the violation was a proximate cause of the accident, the trial court did not err in denying the requested instruction on negligence per se.

We affirm the judgment of the trial court.


                                        Jack Carter
                                        Justice

Date Submitted:        June 8, 2011
Date Decided:          August 16, 2011